

B186

#4

Paid

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATHEW KEHL

PLAINTIFFS,

vs.

ALLEGHENY COUNTY
RICH FITZGERALD
LAURA ZASPEL
NICOLE NAGEL
DEBRA BOGEN

DOES 1-20

DEFENDANTS,

Case No. 2:24 cv 60

**VERIFIED CLAIM**

**OF RIGHTS VIOLATIONS**

**FEDERAL QUESTION**

**42 USC 1983, 1985 (3)**

**TRIAL BY JURY**

**FILED**

JAN 1 7 2024

CLERK U.S. DISTRICT COURT
WEST DIST OF PENNSYLVANIA

## INTRODUCTION

1.  The PLAINTIFF, who served as an employee of Allegheny County for nearly 16 years,

    initiates this action pursuant to 42 U.S.C. Section 1983, alleging a deprivation of rights

    under color of law.

2.  The PLAINTIFF, a dedicated and loyal employee who had devoted a substantial

    portion of his life to their service, subsequently planned to retire with a full pension

    from Allegheny County.

3.  DEFENDANT Rich Fitzgerald, Debra Bogen, and other individuals DOES were responsible for formulating and enforcing a mandatory vaccination policy that not only contravened established legal principles but also violated clearly established law on multiple fronts asserted in the the below mentioned paragraphs.

4.  Following these policy changes, the PLAINTIFF received formal notification from the human resources department, emphasizing the requirement to be vaccinated for COVID-19 by December 1, 2021, under the threat of employment termination.

5.  The PLAINTIFF was ultimately terminated from his employment due to his rightful choice to decline the administration of an experimental mRNA gene therepy treatment, which was blatantly misrepresented as a vaccination, thus COUNTY committing misrepresentation, fraud and additionally infringing upon PLAINTIFF'S rights.

6.  All DEFENDANTS, including those listed as DOES, are alleged to have actively participated and collaborated in the deprivation of rights and associated tortious actions.

7.  The PLAINTIFF asserts that the aforementioned mandate, instigated by Allegheny COUNTY'S policy modifications, contravened the First, Ninth, and Fourteenth Amendments of the United States Constitution concerning PLAINTIFF.

8.  Furthermore, the enactment of the mandate violated separation of powers doctrine because FITZGERALD acted ultra-vires, superseding COUNTY'S home rule charter by overreaching legislative authority making the mandate void ab initio.

9.  It is pertinent to note that the Allegheny County Health Department operated with a budget exceeding $1 billion during the relevant times, with Debra Bogen serving as the head director throughout.

10. Therefore, it is unconscionable for County to conceal the truth concerning the misrepresented facts concerning the alleged vaccine.

11. COUNTY had tens of millions of federal award relief funding which should have

-2-
CLAIM FOR DAMAGES

remediated any misrepresentations and fraud which were reasonably avoidable.

12. COUNTY'S claim of undue hardship is undermined by the fraud and misrepresentation asserted by plaintiff.

## JURISDICTION AND VENUE

6. Jurisdiction exists under 42 U.S.C. 1983, 28 USC 1331, 1343, 1st, 5th, and 14th Amendments to the United States Constitution.

7. Additionally, supplemental jurisdiction exists with this court under the provisions of 28 U.S.C. Section 1367(a) as to the remaining claims under the of the Commonwealth of Pennsylvania and laws from the same factual clams.

8. Venue is proper and all in this complaint occurred within this court district as provided in 28 U.S.C. Section 1391(b).

## III. PARTIES

9. Plaintiff, Mathew Kehl is a natural person, herein after referred as PLAINTIFF. PLAINTIFF was a former employee of Allegheny County and abides in western Pennsylvania and is suing Defendants in their private capacity as well as their employee capacity.

10. Defendant, Allegheny County, hereinafter referred to as COUNTY is a political subdivision in Western Pennsylvania. COUNTY is being sued as a person.

11. Defendant, Rich Fitzgerald, hereinafter FITZGERALD, is the County executive of ALLEGHENY COUNTY. FITZGERALD in his County emolument is finically compensated and has a solemn duty to uphold his sworn and signed oath of office to both Federal and State

Constitutions. Fitzgerald is being sued both in his official job capacity as well as his personal individual capacity.

12. DEFENDANT, Laura Zaspel, hereinafter referred to as ZASPEL, is a H.R. director for the COUNTY. ZASPEL is fiscally compensated by the COUNTY and is being sued in her official job capacity as well as her personal individual capacity.

13. DEFENDANT Nicole Nagle, hereinafter referred to as NAGLE, and is an employee relations manager for the COUNTY. NAGLE is fiscally compensated by the COUNTY and is being sued in her official job capacity as well as her personal individual capacity.

14. DEFENDANT Debra Bogen, hereinafter referred to as BOGEN, was the Health Director for the COUNTY at all times relevant. BOGEN was fiscally compensated by the COUNTY and is being sued both in her official job capacity, and in her personal individual capacity.


## FACTUAL CLAIMS

15. The development of COUNTY'S policy alterations, which encompasses a mandatory injection of an experimental mRNA medical treatment masquerading as a prototypical vaccine was presented to PLAINTIFF in bad faith and with unclean hands.

16. A normal vaccine by definition does provide immunity, but the COVID-19 injection did not provide immunity and was not presented in full disclosure and informed consent by ALLEGHENY COUNTY.

17. To the contrary, the COUNTY'S Health Department issued a myth versus facts document that misrepresented the true nature of the COVID-19 injection. (inspection of **EXHIBIT 1** validates and verifies this fact).

18. This was a grossly misrepresentation by ALLEGHENY COUNTY health department, calling it a vaccination, while concealing the true nature of this unproven method to treat an infectious influenza virus.

19. When ALLEGHENY COUNTY duly notified PLAINTIFF through both verbal communication and correspondence via the United States Postal Service by human resources personnel and other COUNTY actors, that the employment of the PLAINTIFF would be subject to termination if PLAINTIFF did not receive the COVID-19 "vaccinations" by December 1, 2021 (Inspection of **EXIBIT 2** validates and verifies this fact). This document was signed by ZASPEL.

20. This constitutionally defective policy mandate is alleged to have been established by Rich Fitzgerald who consulted with BOGEN and other COUNTY leadership. The implementation was executed and or enforced by ZASPEL, NAGEL in concert with other DOE actors but not limited to COUNTY employees.

21. PLAINTIFF was also notified that he would be given reasonable accommodation and treatment according to the law, concerning any religious and medical exemption.

22. PLAINTIFF did submit letters in the form of exemption showing good faith with medical and religious documentation to opt out of the constitutionally defective mandate. (inspect **EXHIBIT 3** to validate and verify this fact).

23. COUNTY and defendants subsequently terminated PLAINTIFF in a letter dated January 26, 2022, signed by Public works director, Stephen G. Shanley who signed off on the termination of PLAINTIFF'S contract of employment (inspect **EXHIBIT 4** to verify this fact)

24. PLAINTIFF alleges that his employment contract was breached by the COUNTY.

25. PLAINTIFF asserts that the COUNTY failed in its professional duty to diligently review the relevant documents, instead choosing to act in a scripted, premeditated, and predetermined manner, neglecting their duty of care.

26. Furthermore, no qualified physicians reviewed or provided rebuttals to PLAINTIFF's medical evidence, nor were any professional clergy engaged to review or counter PLAINTIFF's religious statements and documentation.

27. PLAINTIFF notes that a former employee, Andrew Nosbisch, conducted a public Right to Know Request, which revealed that the COUNTY had consistently denied medical and religious documentation and exemptions submitted by almost every employee.

28. These circumstances clearly represent a deprivation of due process rights and a prejudicial and inequitable administration of policies.

29. Additionally, during the implementation of COUNTY's policy changes, PLAINTIFF was compelled to undergo mandatory testing in public areas in parking facilities, exposing his private medical and religious choices to the public. This experience led to feelings of humiliation and significant emotional distress and embarrassment resulting in the division of employees into two distinct groups.

30. Moreover, unvaccinated employees, including the PLAINTIFF, were mandated to wear face coverings, creating a conspicuous distinction between two employee categories. Other employees reported that PLAINTIFF was not wearing his mask which resulted in a reprimand.

31. The policy unlawfully enacted by the COUNTY and enforced by the DEFENDANTS and DOES not only infringe upon PLAINTIFF's medical privacy but also exhibited elements of discrimination, divisiveness, and deliberate indifference towards the PLAINTIFF. Additionally, this policy breached medical privacy decisions and exposed private information to individuals not bound by HIPAA regulations to safeguard such confidential data.

31. The behaviors, actions, and objectionable procedures implemented by all DEFENDANTS and the leadership of ALLEGHENY COUNTY led to the public humiliation and degradation of the PLAINTIFF, who had previously been celebrated as essential frontline worker and hero prior to the introduction of what PLAINTIFF believes to be unconstitutional mandates in ALLEGHENY COUNTY's adopted policies.

32.  Furthermore, the personal sacrifices made by the PLAINTIFF during the health emergency contracted COVID-19 on around October 30th 2021, the failure to consider natural immunity acquired through this infection were ignored which was profoundly disheartening. Ultimately PLAINTIFF was fired for not receiving a vaccination when in reality, a "vaccination" was never available.

33.  The anguish, discomfort, public humiliation, erosion of self-esteem, and defamation inflicted by the COUNTY and various parties caused substantial personal suffering to the PLAINTIFF which also affected his family.

29. The aforementioned facts caused PLAINTIFF into un- consensual early retirement, which resulted in diminished pension benefits and health insurance.

30. Furthermore, this was a breach of contract that existed between PLAINTIFF and COUNTY in addition to interference of contract by other actors, including FITZGERALD, which unlawfully terminated, PLAINTIFFS' contract of employment.

31, PLAINTIFF was profoundly dismayed by the extreme actions taken by ALLEGHENY COUNTY, which is an open display of discrimination against PLAINTIFF'S religious beliefs and disregard for medical advice from his healthcare provider, and leading to the termination of the PLAINTIFF, who believes he was exercising constitutionally protected actions.

32.  Moreover, FITZGERALD, by creating, implementing, and enforcing what was perceived as unlawful COUNTY mandate, failed in his sworn subscribed Oath of Office to uphold and support the Constitution for the Commonwealth of Pennsylvania and the U.S. Constitution.

33.  FITZGERALD's Oath of Office is a commitment of public trust, which he can be held accountable for violating in relation to the PLAINTIFF.

34.  FITZGERALD bears a responsibility to avoid infringing upon the rights of his subordinates and to respect the Constitutions, which prevent individuals outside the legislative branch from assuming dictatorial roles by disregarding well-established legal principles.

35.  All other DEFENDANTS, through their actions, omissions, and their duty of care in both professional and personal capacities, are alleged to have knowingly and willingly cooperated with FITZGERALD in depriving the PLAINTIFF of his secured and protected rights.

36.  Finally, the PLAINTIFF contends that all DEFENDANTS acted in a retaliatory manner, showing deliberate indifference towards the PLAINTIFFS' right to decline the injection and displayed prejudice against the PLAINTIFFS' personal religious beliefs and health convictions by subjecting him to questioning, harassment, and their actions led to PLAINTIFFS termination.

37. The PLAINTIFF was in a state of good standing in his employment and definitively would of retire from COUNTY until the the unlawful COVID-19 restrictions unequivocally manifested. Subsequently, PLAINTIFF was terminated without due consideration, lost his health insurance, and compelled to seek new employment opportunities.

39.  The PLAINTIFF maintains that the previously mentioned grievances have led to accumulating and irremediable damages, a loss of self-esteem, financial hardship, physical and emotional consequences.

40.  ALLEGHENY COUNTY, its elected officials, policy enforcers, administrators, and other individuals have a responsibility to uphold the laws of the Commonwealth of Pennsylvania, the United States Constitution, as well as federal laws, to ensure the equitable and impartial management of employment matters and the protection of individuals' secured rights are upheld.

41.  COUNTY modified the terms of employment for its employees without providing reciprocation, equal consideration, or indemnification in the event of vaccine-related injuries or fatalities, by imposing an alleged unlawful mandate for receiving an experimental treatment or face termination.

42. All defendants coordinated and worked in concert together and conspired to deprive PLAINTIFF of secured protected rights. Furthermore, FITZGERALD made public

disparaging remarks against PLAINTIFF's constitutional protected conduct to deny the Covid19 injection, in which a multitude of people currently regret getting because of lack of informed consent.

## FACTUAL CLAIM I  - INTENTIONAL MISREPRESENTATION

42. PLAINTIFF recapitulates and integrates herein all previous paragraphs.

43. PLAINTIFF claims that COUNTY and DEFENDANTS, in bad faith, intentionally acted with misrepresentation toward PLAINTIFF. (See again exhibit 1)

44. COUNTY and individuals within the Allegheny County Health Department knowingly concealed and purposefully omitted a crucial fact: that the administered COVID-19 injection did not meet the criteria of a vaccine, vaccination, or any medical process conferring immunity to PLAINTIFFS or any other recipients.

45. COUNTY's communications, specifically the document titled "MYTH vs. FACTS," artfully employed no fewer than 24 variations of the term "vaccine" with the express intention of obfuscating the genuine nature of COUNTY's mandated injection—an unapproved experimental medical procedure. This demonstrates a degree of reckless indifference and intentional misrepresentation.

46. Further it is evident that COUNTY's primary objective was to elicit reliance on these false claims and to compel compliance with these deceptive assertions through intimidation and pressure.

47. These actions inflicted upon PLAINTIFFS an exceptional degree of anxiety and emotional distress, as they were systematically subjected to a campaign of misinformation and manipulation, culminating in the foreseeable threat to PLAINTIFF'S long-standing job security.

48. PLAINTIFF had a reasonable expectation not to endure such dishonorable treatment that relied on fraudulent misrepresentations, systematically and calculatingly weaponizing these falsehoods against PLAINTIFF in order to use this misrepresentation to fire PLAINTIFF.

49. COUNTY, BOGEN, and FITZGERALD emerge as the proximate cause of the injury sustained by PLAINTIFF.

**FACTUAL CLAIM II** - VIOLATION OF FIRST AMENDMENT; FREE EXERCISE CLAUSE.

50. PLAINTIFF recapitulates and integrates herein all the previous paragraphs, PLAINTIFF claims DEFENDANTS infringed upon PLAINTIFF'S constitutionally secured *First Amendment* Right of free exercise of Religion, in addition to protections guaranteed by *Article 1, Sections 3 and 4 of the Constitution for Commonwealth of Pennsylvania. (Religious Freedom and Anti-disqualification Clause)*

51. DEFENDANTS DOES did directly interview and interrogate PLAINTIFF and were also directly in the chain of command of the infringement of free exercise of rights and ultimately led to the termination of the PLAINTIFF.

52. PLAINTIFF had a Right to refuse to violate his conscience and religious freedoms by refusing to submit to an injection which contained aborted fetal cell lines in it. PLAINTIFF believe that consenting would have been an abomination and dishonored PLAINTIFF'S body which PLAINTIFF declare is "The Temple of God", **First Corinthians 3:17.** *"Do you not know you are the Temple of God, and the Holy Spirit lives in You? If anyone destroys God's temple, God will destroy him, for God's temple is sacred, and You ARE the Temple."*

53. The aborted fetal line ingredients were inside of all of the COVID-19 treatments.

54.. PLAINTIFF has further religious Rights not to put foreign, unknown dangerous chemicals into his bloodstream which would further cause injury and defilement into God's Temple. **Leviticus Chapter 17**.

55. PLAINTIFF was interrogated, intimidated and forced to divulge his deeply held religious views, under the scrutiny of DEFENDANTS who reasonably should have known that fundamental liberties of individuals, including employees, are protected by clearly established law. This includes PLAINTIFF'S personal religious beliefs and secured Rights.

56. Further, this deprivation and intrusion to PLAINTIFFS' beliefs, was intimidating, humiliating, embarrassing, stressful, and unconscionable by DEFENDANTS who, with specific intent, dishonored PLAINTIFFS' constitutionally protected conduct.

57. Because DEFENDANTS knowingly and willfully participated in this deprivation and worked in concert with other actors to terminate employment of PLAINTIFF which is prohibited under the first amendment all of the DEFENDANTS emerge as the proximate cause of injury.

**FACTUAL CLAIM III** - VIOLATION OF FREE EXERCISE CLAUSE BY POLICY MANDATE PER COUNTY

58. PLAINTIFF recapitulates and integrates all the previous paragraphs herein, PLAINTIFF claim that DEFENDANT, COUNTY, infringed upon PLAINTIFFS constitutionally protected First Amendment Right of free exercise of Religion, in addition to protections guaranteed by **Article 1, Sections 3 and 4 of the Constitution for Commonwealth of Pennsylvania.**

59. COUNTY in this count created unlawful unconstitutional policy and implemented the execution thereof which was a direct link and 'plausible nexus' in violating PLAINTIFF'S

guaranteed Rights in the principles and legal theory outlined in   *Monell Id at 691-95, 98*

*S.Ct. at 2036-38 Id. at 694, 98 S.Ct. at 2037-38*

59. COUNTY policy also encroached upon PLAINTIFF'S sacred Rights of conscience and

religious freedoms by refusing to submit to a compelled injection which contained aborted

fetal cell lines in it. PLAINTIFF believes that consenting to this medical treatment would

have defiled and dishonored PLAINTIFF'S body which PLAINTIFF declares is "The

Temple of God", **ROMANS 12:1 I beseech you therefore, brethren, by the mercies of**

**God, that ye present your bodies, a living sacrifice, holy, acceptable onto God, [which is]**

**your reasonable service. Also, in, I CORINTHIANS 3:17.** *"Do you not know you are the*

*Temple of God, and the Holy Spirit lives in You?I...., for God's temple is sacred, and You*

*are the Temple."*

60. No vaccine was available with the absence of inherently aborted fetal cells which

encompassed all COVID-19 treatments that were mandated per COUNTY policy.

61. PLAINTIFF has further religious Rights not to put foreign, unknown dangerous

chemicals into his body which would further cause injury and defilement into God's Temple

drawing from the religious practices of a multitude of scriptures, commanding consecration

and separation from unclean things.

62. COUNTY egregious policy caused PLAINTIFF to be subjected to interrogation,

intimidation, and forced to divulge his deeply held religious views, under the scrutiny of

DEFENDANTS who reasonably should have been aware of established fundamental liberties

of PLAINTIFF.

63. Further, this deprivation and intrusion to PLAINTIFF beliefs, was intimidating,

humiliating, embarrassing, stressful, and unconscionable by COUNTY policy which

dishonored PLAINTIFF constitutionally protected conduct.

64. COUNTY policy, which required the PLAINTIFF to wear masks also deprived PLAINTIFFS protected Rights.

65. Because COUNTY knowingly and willfully created unlawful policy, with specific intent to deprive religious liberty, protected by *Article I, Sections 1,3, and 4* of Pennsylvania state constitution in addition to the *First Amendment* of the US Constitution the COUNTY emerges as the proximate cause of injury.

**FACTUAL CLAIM IV** - EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT- COUNTY

66.  PLAINTIFF recapitulates and integrates all the previous paragraphs herein.  PLAINTIFF contends, asserts, and claims that DEFENDANT COUNTY, did willfully, knowingly enact, implement and enforce policies that segregated, divided and isolated PLAINTIFF into a subclass of people, depriving PLAINTIFF equal protection under the law pursuant to the Equal Protections Clause of the Fourteenth Amendment.

67. This was achieved so by COUNTY'S policy, procedure, custom, and practice, which did prejudice and discriminate against PLAINTIFF, who throughout the relevant time was deprived of equal treatment and equal protections.

68. COUNTY'S implementation, intentionally separated PLAINTIFF due to the influence and participatory actions of policymakers within COUNTY leadership ranks, and unreasonably exercised political bias and personal prejudice that was published, which are confirmed and directly linked to a plausible nexus concerning COUNTY'S policy violations regarding the "unvaccinated", specifically PLAINTIFF.

69. These implemented policies of COUNTY were premeditated, and through its supervisors, went to great lengths to give the illusions of fairness, due process, and equal protections under the law, but were clearly disingenuous because of vague and ambiguous requirements

placed upon PLAINTIFF specifically mandating a vaccination, when in fact, no vaccination was available because it was M-RNA medical treatment.

70. COUNTY has had plenty of financial resources, including multiple grants and relief monies to address the health emergency yet COUNTY claimed undue hardship in order to unlawfully violate PLAINTIFF'S status and standing as an equally protected individual.

71. Furthermore, COUNTY introduced policies such as vaccine incentive programs which discriminated against and prevented PLAINTIFF from participating in extra benefits such as paid sick leave which was given to another class of employees. This was a highly prejudicial policy.

72. These benefits were financial, and included cash and extra paid time off work, which was prohibited by the federal award funding given as relief to COUNTY. **2 CFR Section 200.303, internal controls,** prohibits, a violation of the United States Code, constitutional provisions, and discrimination.

73. Moreover, further protections under the law pursuant to **21 USC 360bbb,** provide individuals a Right to refuse the mandated "vaccination" and the PLAINTIFF should not have been punished, prejudiced, classified, and terminated because of his lawful choices to deny an emergency authorized medical treatment. These federal provisions are strictly applicable to this case because COUNTY received federal block grant funding to deal with the health emergency throughout the Commonwealth of Pennsylvania.

74. PLAINTIFF had a Right to not be segregated with an unconstitutional policy and should have been given reasonable accommodations due to the fact of the extra federal funding and well-established legal framework that prohibits COUNTY from creating a policy that directly does not provide equal protections under the law.

75. Numerous other jurisdictions throughout Pennsylvania did not require public servants to mandated vaccination, under the threat of termination. COUNTY is the proximate cause of injury.

**FACTUAL CLAIM V** – VIOLATION OF EQUAL PROTECTION CLAUSE -Fitzgerald

14th AMENDMENT

76. PLAINTIFF recapitulates and integrates all prior paragraphs herein, the Plaintiffs strongly contend, assert, and claim that the DEFENDANT, FITZGERALD, willfully and knowingly enacted and enforced policies that deliberately divided and isolated the PLAINTIFF into a subclass of Peoples, thus denying him equal protection under the law.

77. PLAINTIFF contends and asserts that the actions of FITZGERALD implementing the policies, procedures, customs, and practices that unfairly prejudiced, discriminated and violated reasonable expectations and lawful Right to Equal Protections was done with deliberate indifference.

78. This segregation unreasonably exhibited with political bias and personal prejudice, which can be directly linked to FITZGERALD S public statements.

79. FITZGERALD'S implementation of these policies was premeditated and designed to manipulate PLAINTIFF to submit to the deception that COVID 19 injection provided immunity. However, these efforts resulted in divisive manifestations.

This discrimination led to the denial of additional paid time off from work, a benefit that was unequally granted to "vaccinated" employees.

80. Furthermore, additional protections under the law, pursuant to 21 USC 360bbb, affirm individuals' Right to refuse the vaccine. PLAINTIFF should not have faced punishment, prejudice, classification, or termination due to their lawful choices to decline an emergency-authorized medical treatment. It is essential to emphasize that these federal provisions are strictly applicable in this context, as the County received access to federal access to address the health emergency which could've easily included provisions for equal protections.

81. The PLAINTIFF holds the Right not to be segregated by the DEFENDANTS, who should have reasonably known not to discriminate against them with an unconstitutional policy and should have provided reasonable accommodations. DEFENDANT FITZGERALD emerges as the proximate cause of injury in this Count.

**FACTUAL CLAIM VI** – VIOLATION OF 9TH AMENDMENT

VIOLATION OF PRIVACY

82. PLAINTIFF recapitulates and integrates all previous paragraphs herein; the PLAINTIFF asserts a significant claim regarding the violation of his common law protected 9th Amendment rights. It is contended that all DEFENDANTS willfully and knowingly implemented and enforced policies that flagrantly infringed upon the reasonable expectations of privacy held by PLAINTIFF, thereby depriving Right to Privacy.

83. All DEFENDANTS openly and deliberately violated the Right to Privacy of PLAINTIFF. This violation was executed through the implementation of unlawful policies that required PLAINTIFF to dawn a mask, undergo public testing, and respond to inquiries about personal and private religious beliefs.

84. Furthermore, the DEFENDANTS' policy of testing employees for COVID-19, especially those who had not received the experimental treatment, constituted a grave violation of privacy. This policy exposed PLAINTIFF'S private medical decisions and created a public display, visible to anyone in the testing areas, that revealed PLAINTIFF'S unvaccinated status. Many individuals who observed this information were not bound by HIPAA regulations to safeguard PLAINTIFF'S privacy.

85. The PLAINTIFF has experienced intimidation, fear of threats, and coercion from the DEFENDANTS, who imposed these policies, including the threat of employment termination. Additionally, the requirement for unvaccinated individuals to wear masks while vaccinated individuals were exempted created a clear and stigmatizing distinction.

86. Ultimately, the PLAINTIFF was terminated from his employment for refusing to consent to these unconstitutional mandates and policies, which were intrusions upon his personal and private medical choices. The cumulative facts outlined herein strongly demonstrate a blatant violation of the PLAINTIFF'S reasonable expectation of protected privacy.

87. This assertion is further affirmed by the Pennsylvania Supreme Court in the case of ***Beatty vs. Pennsylvania Department of Agriculture*, OOR DKT. AP 2019-2489**, on January

9, 2020, regarding the Unlawful Disclosure of Personal Information. Likewise, the case of
***Petrusky vs. Girardville Area Municipal Authority***, **OOR DKT. AP 2019-0931**, dated
August 26, 2019, emphasized the Right to Prevent Disclosure of Private Information, as
distinct from exemption. The Court opined that 'the Right of Informational Privacy is
guaranteed by Article 1, Section 1 of the Commonwealth of Pennsylvania Constitution,'
which provides more robust protection for a person's right to privacy than the United States
Constitution.

88. In alignment with common law and these principles in the Ninth Amendment of the
United States Constitution equally safeguards the Plaintiffs' Right to Privacy.

At the time of termination, in the Allegheny COUNTY handbook to employees specifically
section II – R, states that employees should have "no expectation of their right to privacy."

89. PLAINTIFF believes and contends COUNTY previous to the COVID-19 policy changes
intentionally did not respect privacy. PLAINTIFF had a Protected Right to not have his
privacy violated. COUNTY and all DEFENDANTS emerge as the proximate cause of injury
in this claim.

**FACTUAL CLAIM VII** - VIOLATION OF  21 USC section 360 OF THE US CODE and
2CFR 200.303

90. PLAINTIFF recapitulates and integrates all preceding paragraphs herein. PLAINTIFF
alleges that the COUNTY willfully and knowingly contravened Article 1, Section 12 of the
Constitution for the Commonwealth of Pennsylvania by suspending mandatory federal
requisites pursuant to Title 21 of the United States Code, as well as other federal regulations.

91. PLAINTIFF maintains that the COUNTY transgressed 21 USC Section 360 bbb (e) (1) (A) (ii) (iii), which unequivocally establishes PLAINTIFFS' entitlement to refuse the emergency-authorized medical injection that the COUNTY mandated, affecting the terms of PLAINTIFF's employment.

92. Furthermore, the federal grant, directly under the purview of the Office of Inspector General of the United States, necessitates strict adherence to internal controls. The conditions governing the recipient of the federal grant, specifically the Cares Relief Fund amounting to over $200 million, mandate compliance with and guidance following federal statutes, regulations, and the United States Constitution. These provisions were manifestly violated in Sections (a), (b), and (c) of 2 CFR 200.303 and should be subject to audit by the OIG if not rectified promptly.

93. The COUNTY and other parties have an obligation to adhere to the requirements accompanying the federal funding they had access and received. The COUNTY negligently failed to do so, leading to PLAINTIFF's termination under the pretext of a health emergency, for which they received millions of dollars in funding for mitigation of a crisis, which was neglected, disregarded, and violated by COUNTY and Fitzgerald.

94. The COUNTY's suspension and disregard of these mandatory laws, as delineated in this count, inflicted injury, harm, and loss upon PLAINTIFF and represents and emerges as the proximate cause of the injury.

### FACTUAL CLAIM.  VIII  BREACH OF CONTRACT

95.  PLAINTIFF recapitulates and integrates all the preceding paragraphs into this claim. PLAINTIFF assert a claim that COUNTY breached the employment contract existing between PLAINTIFF and Allegheny County. Notably COUNTY did not have any vaccination requirements or prerequisites for the PLAINTIFF prior to his employment.

96. COUNTY altered the terms of employment with PLAINTIFF without providing a reasonable opportunity for negotiation or mutual consideration, thus failing to offer equal terms for both parties.

97. The fact that union representatives were unable to negotiate new terms does not negate the fact that COUNTY did not approach the situation with fairness or transparency in their vague, ambiguous, pre-determined procedures for retaining or loss of employment.

98. COUNTY operated covertly to determine whether medical or religious exemptions would be sufficient to retain employment, thus undermining the contractual relationship between PLAINTIFF and COUNTY without equal consideration, or reciprocity.

99. COUNTY willfully and knowingly terminated PLAINTIFF without PLAINTIFF failing in his obligations to the original terms of the employment contract. COUNTY is the proximate cause of injury.

100. As a result of this breach of contract, PLAINTIFF suffered financial harm due to the abrupt termination of his employment and was also deficient in terms of reciprocity.


**FACTUAL CLAIM IX – TORTIOUS INTERFERENCE OF CONTRACT**


101. PLAINTIFF recapitulates and integrates all previous paragraphs herein and claim that a valid and enforceable contract of employment subsisted between PLAINTIFF and Allegheny County.

102. It is PLAINTIFF'S contention that his union, failing in its duty, did not and could not mitigate Plaintiffs' inherent and common-law right to individually seek redress for these claims of grievances.

103. Because there were no alteration of contractual terms and at no juncture did the County stipulate any requirement pertaining to 'vaccination status' in any preexisting written or oral agreement with PLAINTIFF, the DEFENDANTS, in an act of unilateralism, modified the terms of Plaintiffs' employment contract absent reasonable negotiation, equitable consideration, or reciprocal benefit.

104. Defendant Fitzgerald acted ultra vires, altering the contract terms through an unlawful mandate, thereby precipitating an unjust and premature termination of said contract and consequentially injuring the PLAINTIFF.

105. Concerted interference by County officials, along with all Defendants, independently and collectively engaged in unreasonable and willful interference, usurping and obstructing the contractual engagements of the PLAINTIFF.

106. This premeditated interference, as evidenced by discussions and policy making held during County team meetings, willfully and unlawfully interfered with plaintiff contractual employment.

DEFENDANTS, with full awareness and intent, unlawfully intruded upon PLAINTIFF contractual relationship with the COUNTY, this being in consonance with all previously incorporated allegations.

107. Plaintiffs have endured financial losses attributable to DEFENDANTS interference with the contract, perpetrated individually and collectively through coercion, disparagement, intimidation, and misrepresentation, enforcing a policy that was void ab initio.

108. Defendants FITZGERALD, ZASPEL, NAGLE, AND BOGEN are identified as the proximate causes of the Plaintiffs' injuries.


**FACTUAL CLAIM X**- DUE PROCESS, SUBSTANTIVE AND PROCEDURAL- 14th AMENDMENT

109. PLAINTIFF recapitulates and integrates all preceding paragraphs and claims that COUNTY intentionally and knowingly formulated and implemented policies that transgressed against the substantive and procedural due process rights afforded to PLAINTIFF arising under the Fourteenth Amendment of the United States Constitution.

110. The PLAINTIFF was subjected to unjust, unequal and unfair treatment by COUNTY'S policy and all DEFENDANTS in the following manners, each of which corresponds to distinct actions.

111. COUNTY'S denial of freedom of association to PLAINTIFF was unjust and constrained PLAINTIFF from freely associating with his coworkers, thus impinging upon his common law right to form professional and social relationships within their workplace.

112. The denial of liberty by COUNTY against PLAINTIFF was unduly depriving his personal liberty, encompassing the fundamental freedoms to make autonomous decisions regarding his own body, personal beliefs, and the nature of his medical care and punished PLAINTIFF for exercising said liberty.

113. There was a denial of fairness in the disciplinary actions to PLAINTIFF with the appearance of procedural due process in the sham law loudermill hearing. This was a breach of PLAINTIFF'S right to a fair and impartial procedure when facing employment-related consequences.

114. PLAINTIFF was unjustly denied equal and fair access to employment-related benefits, which infringes upon their right to receive equitable treatment in the workplace.

115. Also the segregation imposed by DEFENDANTS amounted to an illegal process, constituting a violation of PLAINTIFF'S constitutional right of substantive due process.

116. DEFENDANTS failed to act fairly in the process of granting religious exemptions. This process was marred by a lack of impartial expert examination by religious expert and a pronounced bias against PLAINTIFFS sincerely held religious beliefs.

117. DEFENDANTS also denying the medical exemption in void of a medical expert establishing a procedure that deprived PLAINTIFF of his constitutionally protected rights to due process, including the right to a meaningful hearing before adverse employment consequences. Also, the disciplinary action is void from its inception, because a vaccination was never available to the PLAINTIFF because it was a mRNA gene altering treatment.

118. DEFENDANTS operated without fairness in the process of depriving PLAINTIFF of equal treatment and the entitlement to monetary reimbursements directly related to the health emergency, thereby infringing upon his constitutional rights to equal protection and fair treatment.

119. In this Count, all DEFENDANTS clearly emerge as the proximate cause of injury.


**FACTUAL CLAIM XI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**


120. PLAINTIFF recapitulates and integrates all preceding paragraphs herein and it is undeniable that the DEFENDANTS knowingly and intentionally, with foreseeable intent, conspired to unlawfully cause the Plaintiffs to experience the loss of his dignity, employment benefits, emotional security, and self-worth. This transpired because the PLAINTIFF, within his legal rights, declined to participate in fraud including violate his deeply held religious beliefs.

121. The PLAINTIFF was fully within his rights to make this choice, yet the DEFENDANTS subjected him to treatment akin to that of second-class employees and citizens. This resulted

from a county policy that empowered both the DEFENDANTS and other involved actors, who, with evident animus, engaged in verbal ridicule and contemptuous behavior. Such comments alluded to PLAINTIFF being an outcast of society (specifically, but not limited to FITZGERALD), and dangers to the community and workplace. This unkind conduct and repercussions caused and continues to cause emotional distress that the PLAINTIFF endures.

122. The collective distress exacted a physical toll on the PLAINTIFF leading to conditions such as insomnia and unwarranted stress. These adverse consequences stemmed from the loss of job security, income, and retirement.

123. The shock to his conscience from the treatment meted out by the County and the DEFENDANTS was profound in that a premeditated collective effort waged against the PLAINTIFF who was perplexed at the level of mistreatment and never expected such treatment, as detailed in previous sections of these claims of injury.

124. The PLAINTIFF was compelled to endure and tolerate abusive behavior from the COUNT and the DEFENDANTS due to his exercise of religious freedom, freedom of conscience, and adherence to sound medical advice from his physician.

125. This mistreatment deprived PLAINTIFF of health insurance, his longstanding job security, dignity, and self-worth, thereby causing significant emotional and mental anguish.

126. In this context, County, the Defendants, along with other involved actors, held a duty of care to avoid inflicting emotional distress and other forms of abuse upon the PLAINTIFF. It is undeniable that COUNTY and all DEFENDANTS emerge as the proximate cause of the injury suffered."


**FACTUAL CLAIM XII** - CONSPIRACY TO DEPRIVE RIGHTS, VIOLATING 42 USC SECTION 1985 (3)

127.PLAINTIFF recapitulates and integrates all previous paragraphs herein.

128. All DEFENDANTS who acted in concert to deprive civil rights under color of law are prohibited to do so pursuant to 42 USC Section 1985(3),

129. DEFENDANTS who are Publicly employed officials, entrusted with upholding the law and protecting rights must not engage in such conspiratorial actions and are duty-bound to avoid them.

130. Moreover, DEFENDANTS who holding positions of authority and influence, made their actions in all the aforementioned paragraphs highly impactful in depriving PLAINTIFFS rights.

131. FITZGERALD, BOGEN and DOES have a duty to uphold the Constitution and protect civil rights. Engaging in these said rights violations violates this law.

132. The creation, formation, enactment, and implementation of the constitutionally defective policy was deployed intentionally to deprive, substantive and procedural due process, in addition to violating, clearly establish law and denial of religious liberties.

133. There were coordinated efforts and team meetings in addition to emails to department heads of COUNTY in which human resources and multiple actors engaged in this unlawful behavior, practices customs which caused injury to PLAINTIFF.

134. The formation of the myth versus fact propaganda letter issued by COUNTY health department is additional evidence that the compiling of misinformation are further actions of conspiracy to mislead PLAINTIFF from exercising reasonable rights while refusing the COVID-19 injection.

135. PLAINTIFF had a right to not be conspired against and All Defendants emerge as the proximate cause of injury.


**PRAYER OF RELIEF**

Wherefore the PLAINTIFF seeks the following relief.

A. The right to a trial by jury pursuant to the seventh amendment of the United States Constitution in addition to federal rules of civil procedure 38(a)(b) of all triable issues

B. Compensatory Damages of $250,000 each for constitutional violation, 18 USC 3571 (b)(3) per DEFENDANT

C. Compensatory Damages against COUNTY in the amount of $500,000 for each constitutional violation, 18 USC 3571(c)(3).

D. Compensatory Damages against DEFENDANTS decided by the jury for Negligent Infliction of emotional distress.

E. Compensatory damages against each defendant for $150,000 per tort.

F. Compensatory damages pursuant to past and future loss wages, benefits, and potential loss of pension determined by the jury.

G. The right to mediation/ A.D.R.

H. The right to amend this complaint.

I. To have assistance of counsel in addition to attorneys for limited and full scope in this instant matter.

J. Fees accrued for the cost of this litigation.

K. Any further relief the court deems appropriate.


I Do verify that all the aforementioned facts are true to the best of my knowledge pursuing the 28 USC section 1746.

Respectfully, _____  Dated _____ of _____ , 2024

      Mathew Kehl

      124 Teal Dr.

      McKees Rocks PA

      15136      Sui juris

      Email: mkehl119@gmail.com

## CERTIFICATE OF SERVICE

Case Name: MATHEW KEHL v. ALLEGHENY COUNTY, Et al.

Case No. _____

I, the undersigned, certify that on this <u>17  day January , 2024,</u> that true and correct attached documents are hereby served.

   1) VERIFIED CLAIM.

   2) CERTIFICATE OF SERVICE.


By method(s):
☑ HAND DELIVERY        ☐ US POSTAL SERVICE.     ☐ EFC
Is Submitted to:
**x UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT**
  **OF PENNSYLVANIA**
700 Grant St # 512, Pittsburgh, PA 15219


**ALLEGHENY COUNTY**

Mathew Kehl
124 Teal dr.
McKees Rocks Pa. 15136
Email mkehl119@gmail.com

CLAIM FOR DAMAGES