IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATHEW KEHL,

                Plaintiff,

     v.

ALLEGHENY COUNTY, RICH
FITZGERALD, LAURA ZASPEL, NICOLE
NAGEL, DEBRA BOGEN,

              Defendants.

2:24-CV-00060-CCW

## <u>OPINION</u>

Before the Court is Defendants' Motion to Dismiss Pro se Plaintiff Mathew Kehl's Complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. ECF No. 17. For the reasons set forth below, the Court will **GRANT IN PART** the Motion. Because the Court will grant Mr. Kehl leave to amend with respect to several of his federal claims, the Court will defer consideration of Mr. Kehl's state law claims until such time as it becomes clear whether there will be a viable federal claim in this case. Accordingly, the Court will **DENY WITHOUT PREJUDICE** the Motion to the extent that it seeks dismissal of Mr. Kehl's state law claims.

## I.     Factual Background

This case arises from Defendant Allegheny County's decision to terminate Mr. Kehl's employment after he refused to comply with its COVID-19 vaccine mandate. ECF No. 1. In addition to Allegheny County, Mr. Kehl has named four current or former County employees as Defendants: County Executive Rich Fitzgerald, Human Resources Director Laura Zaspel,

Employee Relations Manager Nicole Nagel,[1] and Health Director Debra Bogen (collectively "Individual Defendants").  ECF No. 1 ¶¶ 11–14.

The relevant factual allegations, taken as true, are as follows.

Mr. Kehl served as an employee of Allegheny County for almost sixteen years.[2]  ECF No. 1 ¶ 1.  On September 29, 2021, Allegheny County enacted a COVID-19 vaccine mandate, which required all executive branch employees to either show proof of vaccination or an accommodation by December 1, 2021 or be subject to termination.  Complaint Ex. 1, ECF No. 1-3.  The vaccine mandate was "formulat[ed]" and "established" by Defendants Fitzgerald and Bogen.  ECF No. 1 ¶¶ 3, 20.  The mandate was implemented to "promote the health and safety of the county workforce, and to ensure the continued protection of the public with whom the workforce interacts."  Complaint Ex. 1, ECF No. 1-3.  The County believed that the mandate would achieve these goals because, based on information from the Centers for Disease Control and Prevention and other agencies, the COVID-19 vaccine was the best way to slow the spread of the virus and prevent infection by variants.  *Id.*  The County's vaccine mandate allowed for "exceptions as required by law."  *Id.*

Mr. Kehl refused to receive the vaccine.  *Id.* ¶ 30.  As a result, he was required to wear a face mask, undergo periodic mandatory COVID-19 testing, and respond to questioning regarding his "religious beliefs and health convictions."  *Id.*  ¶¶ 29–30, 36.  As an unvaccinated employee, Mr. Kehl was also ineligible for benefits like additional paid sick leave that vaccinated employees

---

[1] Mr. Kehl has named "Nicole Nagel" in the caption of his Complaint.  ECF No. 1.  However, the Complaint intermittently refers to both Defendant "Nagel" and Defendant "Nagle," *id.*, and Defendants' brief in support of their Motion to Dismiss refers to Defendant "Nagle."  ECF No. 18.  The Court will refer to Defendant "Nagel" because that is the spelling in the case caption.

[2] While Exhibit 4 to Mr. Kehl's Complaint indicates that he was a truck driver for the County, it is unclear whether he served in that capacity during his entire sixteen-year tenure.  *See* Complaint Ex. 4 at 3–4, ECF No. 1-6.

received.  *Id.* ¶¶ 71–72, 79.  Mr. Kehl alleges that this treatment "divided and isolated [him] into a subclass of people," *id.* ¶¶ 66, 76, and infringed on his right to privacy, *id.* ¶ 83.

On September 29, 2021, Mr. Kehl received a letter from the County, signed by Defendant Zaspel, stating that if he did not comply with the vaccine mandate by December 1, 2021, his employment with the County would be subject to termination.  ECF No. 1 ¶ 19.  To avoid termination, Mr. Kehl submitted exemption requests to the County in an attempt to opt-out of the vaccine mandate on religious and medical grounds.  ECF No. 1 ¶ 22;  Complaint Ex. 4, ECF No. 1-6.  Mr. Kehl's request for a medical exemption appears to be based on his belief that he did not present a danger to his coworkers or the public because he had already contracted COVID-19 and therefore had natural immunity.  *See* Complaint Ex. 4, ECF No. 1-6.  Mr. Kehl's religious exemption request was based on his view that that submitting to vaccination would violate his "religious and faithful beliefs" because the "injections were researched and manufactured using baby parts."  *Id.* at 9.  Mr. Kehl's exemption requests were denied by the County in letters dated December 6, 2021, and December 20, 2021.  Complaint Ex. 5, ECF No. 1-7.

On January 10, 2022, Mr. Kehl attended a pre-disciplinary hearing with County officials[3] to discuss his noncompliance with the County's vaccine mandate.  *Id.*  At the hearing, Mr. Kehl again asserted a request for an exemption from the vaccine mandate on religious and medical grounds.  *Id.*  The County denied his renewed request by letter dated January 14, 2022.  *Id.*  On January 26, 2022, the County terminated Mr. Kehl's employment due to his failure to comply with the vaccine mandate.  *Id.*

---

[3] Mr. Kehl's termination letter does not specify who was at this hearing, nor does Mr. Kehl identify the participants in his Complaint.  *See generally* ECF No. 1;  Complaint Ex. 5, ECF No. 1-7.

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly*

*v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"). And when resolving a pro se plaintiff's motion, courts "liberally construe pro se filings with an eye toward their substance rather than their form." *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

## III.    Legal Analysis

Mr. Kehl's Complaint asserts twelve claims against various Defendants. His federal claims include constitutional claims under 42 U.S.C. § 1983[4] for violations of the Free Exercise Clause of the First Amendment (Counts II and III), the Equal Protection Clause of the Fourteenth Amendment (Counts IV and V), the Ninth Amendment right to privacy (Count VI), his rights to procedural and substantive due process under the Fourteenth Amendment (Count X), civil rights conspiracy claims under 42 U.S.C. § 1985(3) (Count XII), and claims under 21 U.S.C. § 360 (Count VII).[5] His state law claims include intentional misrepresentation (Count I), breach of contract (Count VIII), tortious interference with contract (Count IX), and negligent infliction of emotional distress (Count XI).[6] ECF No. 1. In response, Defendants contend that Mr. Kehl has failed to state a claim for each Count he alleges. ECF No. 18. The Court will address each claim in turn below.

---

[4] While Mr. Kehl does not explicitly state that he is challenging each of these alleged constitutional violations pursuant to § 1983, he does state that he "initiates this action pursuant to 42 U.S.C. § 1983." ECF No. 1 ¶ 1. Construing the Complaint liberally, the Court therefore interprets Mr. Kehl to bring his constitutional claims pursuant to § 1983. *See Delgado*, 363 F. App'x at 855 (noting that courts should liberally construe *pro se* filings with an eye towards their substance).

[5] The Court has jurisdiction over Mr. Kehl's federal claims pursuant to 28 U.S.C. § 1331.

[6] Mr. Kehl also appears to assert claims for violation of the Pennsylvania Constitution in Counts II, III, VI, and VII alongside the federal claims that he asserts in those Counts. *See* ECF No. 1 ¶¶ 50, 58, 87, 90.

A.    **Mr. Kehl has Failed to State a Claim under § 1983**

Mr. Kehl advances several different constitutional claims based on Defendants' implementation and enforcement of Allegheny County's COVID-19 vaccine mandate.  ECF No. 1 at 10–20.

1.    **Legal Framework**

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983.  To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor."  *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983).  Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

While "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), it "can be held liable [for constitutional violations] when the 'execution of a government's policy or custom. . . inflicts the injury.'"  *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell*, 436 U.S. at 694).  To state a *Monell* claim, a plaintiff must allege that his "harm was caused by a constitutional violation" and that "the municipality is responsible for that

6

violation." *Bhatnagar*, 2023 WL 5378834, at *3.  Where there is no underlying constitutional violation, a *Monell* claim will not lie.  *Id.* (affirming dismissal of a *Monell* claim after determining that the plaintiff "had no remaining cognizable constitutional claim").  Section 1983 claims brought against individual defendants acting in their official governmental capacities "are subject to the same *Monell* standard for institutional liability" because such claims "essentially are claims against the [government] itself."  *Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *3 n.4 (3d Cir. June 7, 2024) (citing *Monell*, 436 U.S. at 690 n.55).

### 2.    Mr. Kehl has Failed to Allege Defendant Nagel's Personal Involvement

Mr. Kehl asserts § 1983 claims against all of the Individual Defendants, in their individual and official capacities.  *See generally* ECF No. 1.  Defendants argue that such claims ought to be dismissed because Mr. Kehl has failed to allege how the Individual Defendants were personally involved in violating his constitutional rights.  ECF No. 18 at 3.

"Section 1983 liability cannot be based solely upon the basis of *respondeat superior*." *Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 473 (W.D. Pa. 2007) (Conti, J.) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Rather, an individual defendant in a § 1983 case "must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (internal quotations omitted).  Personal involvement can be shown through particularized allegations of "actual knowledge and acquiescence" in the alleged violation.  *See Rode*, 845 F.2d at 1207.  Additionally, a supervisor's conduct may be actionable where they "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)

(quotation omitted).  "Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient."  *Vo v. Wetzel*, No. 1:19-CV-00084-RAL, 2021 WL 6197743, at *8 (W.D. Pa. Dec. 31, 2021) (Lanzillo, M.J.), *aff'd*, No. 22-1210, 2022 WL 1467978 (3d Cir. May 10, 2022);  *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A § 1983] complaint is adequate where it states the conduct, time, place, and persons responsible.").

Here, the Individual Defendants include Rich Fitzgerald, Laura Zaspel, Nicole Nagel, and Debra Bogen.  ECF No. 1 ¶¶ 11–14.  At the outset, the Court concludes that the Complaint fails to allege a basis for holding Defendant Nagel liable under § 1983.  The only substantive allegation involving Defendant Nagel is that she "executed and or enforced" the County's vaccine mandate. ECF No. 1 ¶ 20.  This does not establish that Defendant Nagel had any actual knowledge of or involvement in the specific events that led to the alleged violations of Mr. Kehl's constitutional rights.  As for Defendants Fitzgerald, Zaspel, and Bogen, the Court concludes that Mr. Kehl has sufficiently alleged their personal involvement at this early stage of these proceedings.

Accordingly, the Court will dismiss Mr. Kehl's § 1983 claims against Defendant Nagel for failure to allege her personal involvement.  The § 1983 claims against Defendants Zaspel, Fitzgerald, and Bogen will not be dismissed solely for failure to allege those Defendants' personal involvement.[7]

### 3.    Mr. Kehl has Failed to State a Free Exercise Claim

In Count II of the Complaint Mr. Kehl asserts a violation of the First Amendment's Free Exercise Clause against the Individual Defendants, and in Count III he asserts a *Monell* claim

---

[7] In light of the Court's decision to dismiss the § 1983 claims against Defendant Nagel for lack of personal involvement, references to the "Defendants" or the "Individual Defendants" in the context of Mr. Kehl's § 1983 claims necessarily do not include Defendant Nagel.

against Allegheny County for the same violation.[8, 9]  ECF No. 1 at 10–11.  The crux of Mr. Kehl's Free Exercise claims is that Allegheny County's COVID-19 vaccine mandate deprived him of his religious freedom by presenting him with an untenable choice:  accept a COVID-19 vaccination—which Mr. Kehl states would violate his religious freedom because the vaccine allegedly contained aborted fetal cells—or face termination.  ECF No. 1 at 10–12.  Defendants counter that Allegheny County's vaccine mandate was constitutional as a neutral law of general applicability.  ECF No. 18 at 5–8.  The Court agrees with the Defendants and will dismiss Counts II and III.

The "Free Exercise Clause 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'"  *Spivack v. City of Phila.*, 109 F.4th 158, 166 (3d Cir. 2024) (quoting *Emp. Div., Dep't of Hum. Res. Of Or. v. Smith*, 494 U.S. 872, 879 (1990)).  "Government policies that are both neutral and generally applicable are subject to rational basis review," *i.e.*, they must only be rationally related to a legitimate state interest.  *Id.*  Conversely, if a law is not neutral or generally applicable it triggers strict scrutiny and must be narrowly tailored to further a compelling state interest.  *Id.*  "A government policy is neutral if it does not 'restrict[] practices because of their religious nature' or evince 'intoleran[ce] of religious beliefs.'"  *Id.* at 167 (quoting *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021)).  "And a policy is generally applicable so long as it does not either 'provid[e] a mechanism for individualized exemptions' or

---

[8] While Defendants characterize Count III as stating a claim under the Pennsylvania Constitution, ECF No. 21 at 8, the Court interprets Count III to allege that Allegheny County's COVID-19 policy violated Mr. Kehl's First Amendment rights, as well as his rights under the Pennsylvania Constitution.  *See* ECF No. 1 ¶¶ 58–65.

[9] Because Mr. Kehl asserts § 1983 claims against the County and against the Individual Defendants in both their individual and official capacities, *see* ECF No. 1 ¶¶ 10–14, the Court will first determine whether Mr. Kehl has plausibly alleged that his First Amendment rights were violated.  This approach is appropriate because regardless of who the Defendant is or in what capacity they are being sued, there can be no § 1983 liability without an underlying constitutional violation.  *See Nicini*, 212 F.3d at 806; *Bhatnagar*, 2023 WL 5378834, at *3; *Beers*, 2024 WL 2874283, at *3 n.4.  The Court takes this same approach with respect to all of Mr. Kehl's § 1983 claims and, to the extent it does not find a constitutional violation, ends its analysis there.

'prohibit[] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Id.* (quoting *Fulton*, 593 U.S. at 533–34).

Judicial colleagues in this District have recently reviewed the same vaccine mandate at issue in this case and determined that it was constitutional as a neutral law of general applicability. *See Shim v. Allegheny Cnty.*, No. 23-393, 2024 WL 1095811, at *2–3 (W.D. Pa. Mar. 13, 2024) (Bissoon, J); *Chesher v. Allegheny Cnty.*, No. 22-CV-1822, 2024 WL 2248207, at *7–9 (W.D. Pa. May 16, 2024) (Horan, J.). In *Shim*, Judge Bissoon concluded that Allegheny County's vaccine mandate was neutral because it applied "to all Allegheny County employees" and "did not single out any person or groups of people." *Shim*, 2024 WL 1095811, at *2. Rather, the mandate "stemmed from Defendants' public health concerns caused by the rise of infection numbers of COVID-19." *Id.* And in *Chesher*, Judge Horan reached this same conclusion. *See Chesher*, 2024 WL 2248207, at *8 (concluding that Allegheny County's vaccine mandate was neutral because it "required that *all* County employees under the Executive Branch" be vaccinated, only allowed for exceptions as required by law, and was not enacted because of the plaintiff's or any other employees' religious beliefs).

This Court concludes that Allegheny County's vaccine mandate was neutral based on the same reasoning applied in *Shim* and *Chesher*. The policy applied to all Allegheny County employees under the executive branch regardless of their religious affiliation. *See* ECF No. 1-3 ("COVID-19 vaccinations will be required of *all* county employees under the executive branch.") (emphasis added). And while Mr. Kehl alleges that he was terminated despite his request for a religious exemption, ECF No. 1 ¶¶ 22–23, there are no allegations from which the Court can infer that Allegheny County's treatment of Mr. Kehl's religious exemption request or its implementation of the vaccine mandate more generally evinced hostility towards religion.

The Court also concludes that Allegheny County's vaccine mandate was generally applicable. First, Mr. Kehl does not allege any facts supporting the proposition that the vaccine mandate "prohibit[ed] religious conduct while permitting secular conduct that undermine[d] the government's asserted interests in a similar way." *Spivack*, 109 F.4th at 174; *see generally* ECF No. 1. The only exemptions from the vaccine mandate were those "required by law," ECF No.1-3, and it does not follow that exemptions "required by law" necessarily included secular exemptions to the exclusion of religious ones.

Second, Mr. Kehl does not allege that by providing for exemptions as required by law, Allegheny County employed a mechanism for discretionary exemptions to be granted by any particular individual. *See generally* ECF No. 1. Just because a mandate provides for exemption procedures does not mean those procedures are *per se* discretionary such that the mandate cannot be generally applicable. *See Spivack*, 109 F.4th 172 n.8 (explaining that permitting religious exemptions does not automatically vitiate general applicability so as to trigger strict scrutiny). Rather, it "is a policy of individualized, discretionary exemptions in which a government official may unilaterally evaluate 'the particular reasons for a person's conduct'" that renders a mandate not generally applicable. *Id.* (quoting *Fulton*, 593 U.S. 522, 533 (2021)). Because there are no allegations that Allegheny County had a policy of providing individualized discretionary exemptions, the Court concludes that the County's mandate was generally applicable. *See generally* ECF No. 1; *see also Chesher*, 2024 WL 2248207, at *8 ("Allegheny County did not create a formal system of discretionary exceptions to be determined by any specific individual.").

Because the Court concludes that Allegheny County's COVID-19 vaccine mandate was neutral and generally applicable, rational basis review applies. "Rational basis review is a very deferential standard." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018).

"The general rule is that legislation is presumed to be valid and will be sustained if [it is] rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  The vaccine mandate in this case easily meets this low threshold.  Allegheny County enacted the vaccine mandate to "promote the health and safety of the county workforce, and to ensure the continued protection of the public with whom the workforce interacts" by slowing the spread of COVID-19.  Complaint Ex. 1, ECF No. 1-3.  This is a legitimate state interest.  *See Spivack,* 109 F.4th at 178.  The vaccine mandate was rationally related to this interest because, based on information from the Centers for Disease Control and Prevention, among other bodies, the COVID-19 vaccine was the best way to slow the spread of the virus and prevent infection by variants.  Complaint Ex. 1, ECF No. 1-3;  *see also Shim*, 2024 WL 1095811, at *3 (finding the vaccine mandate rationally related to preventing the spread of COVID-19);  *Chesher*, 2024 WL 2248207, at *9 (same).

Because Allegheny County's vaccine mandate survives rational basis review, Mr. Kehl's Free Exercise claims in Counts II and III of the Complaint fail.  However, the Court will grant Mr. Kehl leave to amend these Counts.  *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (explaining that courts should permit a curative amendment in the civil rights context unless such an amendment would be inequitable or futile).

### 4.    Mr. Kehl has Failed to State an Equal Protection Claim

In Count IV of the Complaint, Mr. Kehl asserts a claim under the Fourteenth Amendment's Equal Protection Clause against Allegheny County only,[10] and in Count V of the Complaint he asserts a claim against Defendant Fitzgerald only for the same violation.  ECF No. 1 at 13–15.  Mr.

---

[10] The Court interprets this as a *Monell* claim, and accordingly will first consider whether there is an underlying constitutional violation.  Because the Court finds no underlying constitutional violation, it need not reach the remaining components of the *Monell* analysis.  *See* note 9, *supra*.

Kehl contends that by implementing the COVID-19 vaccine mandate, Allegheny County and Defendant Fitzgerald impermissibly "divided and isolated plaintiff into a subclass of people," *id.* ¶¶ 66, 76, and that vaccinated employees received benefits that unvaccinated employees did not, such as additional paid sick leave, *id.* ¶¶ 71–72, 79. Defendants counter that Mr. Kehl's Equal Protection Claims fail because Mr. Kehl was not similarly situated with vaccinated employees, so he cannot base his claims on vaccinated employees being treated more favorably. ECF No. 18 at 9–10. The Court agrees with the Defendants.

The Fourteenth Amendment prohibits any State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]o bring a successful equal protection claim, plaintiffs 'must demonstrate that they received different treatment from that received by other individuals similarly situated.'" *Child.'s Health Def.*, 93 F.4th at 84 (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009)). "At the pleading stage, that means plaintiffs must adequately allege that they are alike in all relevant respects." *Id.* (quotations omitted).

Here, Mr. Kehl has not shown that he was treated any differently from similarly situated employees. First, as discussed above, the County's vaccine mandate applied equally to all executive branch employees. *See* ECF No. 1-3. Second, Mr. Kehl's assertion that vaccinated employees were treated more favorably than him is irrelevant to the Equal Protection analysis because as an unvaccinated employee he was definitionally not "alike in all relevant respects" with vaccinated employees. *Child.'s Health Def.*, 93 F.4th 66 at 84. And Mr. Kehl has not alleged facts demonstrating that he was treated any differently than other non-vaccinated employees. *See generally* ECF No. 1. Indeed, he admits that Defendants "consistently denied medical and religious documentation and exemptions submitted by almost every [non-vaccinated] employee."

*Id.* ¶ 27; *see also Chesher*, 2024 WL 2248207, at *10 (dismissing the plaintiff's Equal Protection claims in almost exactly the same circumstances currently before the Court).

Even if vaccinated and unvaccinated employees were "similarly situated," Mr. Kehl's Equal Protection claims would fail. The Third Circuit has found that only classifications involving a protected class are subject to heightened scrutiny—and being unvaccinated "does not confer protected status." *See Child.'s Health Def.*, 93 F.4th at 84 n.38. Thus, Defendants' vaccine mandate and differential treatment of unvaccinated employees would only need to survive rational basis review. *See id.* at 84. As discussed above in Part III.A.2, the Court concludes that the vaccine mandate easily meets this low threshold. Accordingly, Mr. Kehl's Equal Protection claims in Counts IV and V of the Complaint fail and will be dismissed. However, the Court will grant Mr. Kehl leave to amend with respect to these claims.

### 5.    Mr. Kehl has Failed to State a Ninth Amendment Claim

In Count VI of his Complaint, Mr. Kehl brings a claim against all of the Defendants on the basis that they "willfully and knowingly implemented and enforced policies that flagrantly infringed upon the reasonable expectations of privacy held by [Mr. Kehl], thereby depriving [him of his Ninth Amendment] Right to Privacy." ECF No. 1 ¶ 82. Defendants argue that this claim must be dismissed because the Ninth Amendment is a rule of construction and does not confer substantive rights. ECF No. 18 at 10–11. Defendants are correct. *See Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) (citing *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007) ("[T]he Ninth Amendment does not independently provide a source of individual constitutional rights."); *Nicolette v. Caruso*, 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003) (Conti, J.) ("[T]he Ninth Amendment standing alone does not confer substantive rights for

purposes of pursuing a constitutional claim."). Accordingly, Count VI of the Complaint will be dismissed. Because amendment would be futile, dismissal will be with prejudice.

### 6.    Mr. Kehl has Failed to State a Procedural or Substantive Due Process Claim

In Count X of the Complaint, Mr. Kehl alleges that the Defendants violated his rights to procedural and substantive due process under the Fourteenth Amendment.[11] ECF No. 1 ¶¶ 109–119.

### a.    Mr. Kehl has Failed to State a Procedural Due Process Claim

With respect to his procedural due process claim, Mr. Kehl alleges that there "was a denial of fairness in the disciplinary actions" taken against him because the pre-termination *Loudermill* hearing which he was afforded was a "sham." ECF No. 1 ¶ 113. Defendants argue that Mr. Kehl's due process claim fails because he admits he was afforded an opportunity to be heard at a *Loudermill* hearing, and he does not explain how that hearing was insufficient to provide him due process. ECF No. 18 at 15. The Court agrees with the Defendants.

To make out a procedural due process claim, a plaintiff must establish that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Biliski v. Red Clay Consol. School. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (internal quotation marks omitted). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 220 (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)). A pre-termination hearing "need not be elaborate and serves only as an

---

[11] While Defendants appear to interpret Count X as only alleging claims against the County, ECF No. 18 at 14–18, liberally construing the Complaint, the Court interprets Mr. Kehl to allege that all of the Defendants violated his Fourteenth Amendment rights to procedural and substantive due process. *See* ECF No. 1 ¶¶ 109–19.

'initial check against mistaken decisions.'" *Thomas v. Del. State Univ.*, 626 F. App'x 384, 387 (3d Cir. 2015) (quoting *Loudermill*, 470 U.S. at 545). Thus, a "tenured public employee is [only] entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 545.

Here, Mr. Kehl received notice on September 29, 2021, that he would be required to receive a COVID-19 vaccination or be subject to termination. Complaint Exs. 1 and 3, ECF Nos. 1-3, 1-5. Mr. Kehl admits that he was afforded a hearing prior to his termination to discuss his noncompliance with the County's COVID-19 vaccine mandate. ECF No. 1 ¶ 113. Indeed, Mr. Kehl's termination letter notes that at his hearing Mr. Kehl was able to assert his position that he should be exempt from the vaccine mandate on religious and medical grounds. *See* Complaint Ex. 5, ECF No. 1-7. While the County denied Mr. Kehl's request for an exemption, *id.*, the allegations in the Complaint demonstrate that Mr. Kehl was afforded an opportunity to be heard prior to his termination. To the extent that Mr. Kehl is attempting to allege that he was not afforded sufficient post-termination due process, he has failed to include any such facts in his Complaint. *See generally* ECF No. 1.

For the foregoing reasons, Mr. Kehl's procedural due process claim in Count X of the Complaint fails. However, the Court will grant Mr. Kehl leave to amend this claim.

### b.    Mr. Kehl has Failed to State a Substantive Due Process Claim

Mr. Kehl alleges that in enacting and implementing the County's COVID-19 vaccine mandate, the Defendants deprived him of his "fundamental freedoms to make autonomous decisions regarding his own body, personal beliefs, and the nature of his medical care and punished [him] for exercising said liberty." ECF No. 1 ¶ 110–12. Defendants respond that vaccine mandates do not implicate a fundamental right, and therefore rational basis review applies. ECF No. 18 at 16–18.

16

There are two types of substantive due process claims: challenges to legislative acts and challenges to non-legislative state action. *Nicholas v. Pa. State. Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000). Challenges to a legislative act's validity are "based on the plaintiff's claim that the act burdens a fundamental right or is not rationally related to a legitimate state interest." *Dankanich v. Pratt*, No. 19-735, 2020 WL 7227249, at *3 (E.D. Pa. Dec. 8, 2020) (citing *Nicholas*, 227 F.3d at 139–40). Meanwhile, challenges to non-legislative state action are "based on the plaintiff's claim that the action is arbitrary, irrational, tainted by an improper motive, or so egregious that it shocks the conscience." *Id.* Legislative acts are "generally laws and broad executive regulations [that] apply to large segments of society," while non-legislative acts "typically apply to one person or to a limited number of persons." *Nicholas*, 227 F.3d at 139 n.1. Here, Mr. Kehl challenges a legislative act—the County's vaccine mandate—because it was a broad executive regulation affecting a large segment of the population.

Further, there are two types of substantive due process challenges to a legislative act: a facial challenge and an as-applied challenge. A facial challenge attacks "a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *LoPresti v. Johnson*, No. 22-1435, 2023 WL 6890732, at *4 (3d Cir. Oct. 19, 2023) (citing *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)). Meanwhile, an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Marcavage*, 609 F.3d at 273. Here, Mr. Kehl does not specify which type of challenge he is bringing, but it appears to the Court that he is asserting an as-applied challenge because he is attacking the vaccine mandate's application to him under a particular set of circumstances.[12]

---

[12] Additionally, to the extent Mr. Kehl also brings a facial challenge, the Court finds that he has failed to state such a claim. To succeed on a facial attack, Mr. Kehl must "establish that no set of circumstances exists under which [the

Therefore, to assess Mr. Kehl's as-applied substantive due process challenge, the Court must determine the applicable level of scrutiny. Courts apply rational basis review "unless the challenged statute 'abridges certain fundamental rights and liberty interests.'" *LoPresti*, 2023 WL 6890732, at *4 (citing *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014)). A fundamental right "must be either enumerated in the Bill of Rights or 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty.'" *Child.'s Health Def., Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 78 (3d Cir. 2024). "Determining the level of scrutiny 'requires [courts] to identify the alleged due process right at issue carefully and precisely.'" *LoPresti*, 2023 WL 6890732, at *4 (citing *McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003)).

Here, Mr. Kehl identifies two main fundamental rights he believes are at issue: his right to bodily autonomy and his right to refuse unwanted medical treatment. ECF No. 1 ¶ 112. Despite Mr. Kehl's characterization of the rights at issue, the Court must carefully and precisely define them. *LoPresti*, 2023 WL 6890732, at *4 (finding that plaintiff "frame[d] the alleged right too broadly"). And the Court finds that, in characterizing the issue as one of medical treatment or bodily autonomy, Mr. Kehl has framed the issue too broadly. Instead, the narrow right at issue is his right to refuse vaccination.[13] *See Child.'s Health Def.*, 93 F.4th at 78 (identifying the right to refuse vaccination as the right at issue where plaintiffs challenged a vaccine mandate and asserted

---

vaccine mandate] would be valid." *LoPresti*, 2023 WL 6890732, at *4. And because the Court finds that the vaccine mandate was valid in at least one circumstance—as applied to Mr. Kehl—he has failed to sufficiently allege a facial attack.

[13] Further, the rights as characterized by Mr. Kehl—namely, the right to bodily autonomy and the right to refuse unwanted medical treatment—are not implicated by Defendants' vaccine mandate. *See Child.'s Health Def.*, 93 F.4th at 79–80 (explaining that cases recognizing the fundamental right to refuse unwanted medical treatment are "categorically distinct" from cases involving a vaccine mandate and asserting that the Supreme Court would be unlikely to find that such a mandate implicates the right to bodily autonomy); *see also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir. 2021) (finding that a vaccine mandate did not infringe on plaintiffs' rights to medical freedom and bodily autonomy); *Norris v. Stanley*, 73 F.4th 431 (6th Cir. 2023) (rejecting plaintiffs' claims that vaccine mandate implicated their liberty interests in bodily integrity and autonomy).

a right "to refuse unwanted medical treatment"). And as "federal courts have uniformly held, there is no fundamental right to refuse vaccination." *Child.'s Health Def.*, 93 F.4th at 78. Accordingly, because the vaccine mandate does not implicate a fundamental right, the Court will apply rational basis review. And under that review, the Court finds that the vaccine mandate "is rationally related to the legitimate government interest of stemming the spread of COVID-19 and promoting the health and safety of the public." *Shim*, 2024 WL 1095811, at *3–4; *see also Child.'s Health Def.*, 93 F.4th at 81–83 (finding that a COVID-19 vaccine mandate survives rational basis review).

For all of the foregoing reasons, Mr. Kehl has failed to state a claim for a substantive due process violation.[14] Because the Court finds that amendment would be futile, the Court will not provide Mr. Kehl with leave to amend, and the dismissal will be with prejudice. *See Balicki*, 875 F.3d at 151.

### B.    Mr. Kehl has Failed to State a Claim for Violation of the Food, Drug, and Cosmetic Act

In Count VII of the Complaint, Mr. Kehl alleges that Allegheny County violated certain provisions of the federal Food, Drug, and Cosmetic Act ("FDCA") codified at 42 U.S.C. §§ 360bbb-3(e)(1)(A)(ii)–(iii) which, according to Mr. Kehl, "unequivocally establish[] [his] entitlement to refuse the [COVID-19 vaccine]" mandated by the County. ECF No. 1 ¶ 91. Defendants respond with several arguments, including that the FDCA does not confer a private

---

[14] Separately in Count X, Mr. Kehl alleges that he was deprived of his "common law right" to "freely associate[e]" with his coworkers in order to "form professional and social relationships within their workplace." ECF No. 1 ¶¶ 110–11. Defendants do not engage with this argument. *See generally* ECF No. 18. Although Mr. Kehl refers to a "common law right" to association, the Court interprets Mr. Kehl as alleging a deprivation of his constitutional right to freedom of association. *See Rode*, 845 F.2d at 1204 ("[A]ssociations founded on intimate human relationships [are] protected as a fundamental element of liberty."). It is clear to the Court that to the extent Mr. Kehl alleges such a deprivation based on Defendants' interference with his relationships with his co-workers, his claim would fail because "[t]he Constitution . . . does not recognize a generalized right of social association." *Martsolf v. Christie*, No. 12-cv-01018, 2013 WL 1631975, at *4 (W.D. Pa. Apr. 16, 2013) (Schwab, J.) (citing *Kirby v. Loyalsock Township School Dist.*, 837 F. Supp 2d 467, 474 (M.D. Pa. 2011)); *see also Kirby*, 83 F. Supp. 2d at 474–75 (collecting cases supporting the proposition that mere friendships, including "professional" ones, are not constitutionally protected relationships).

right of action.  ECF No. 18 at 11–13.  In that regard, Defendants are correct.  *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) ("Private parties may not bring enforcement suits [under the FDCA].") (citation omitted);  *Horsley v. Kaiser Found. Hosps.*, No. 23-cv-05628, 2024 WL 3956313, at *7 (N.D. Cal. Aug. 26, 2024) (finding no implied private right of action under 21 U.S.C. § 360bbb-3).  Accordingly, Count VII of the Complaint will be dismissed, and because amendment would be futile, dismissal will be with prejudice.[15]

### C.      Mr. Kehl has Failed to State a Claim under § 1985(3)

In Count XII of the Complaint, Mr. Kehl alleges that Defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(3).  ECF No. 1 ¶¶ 127–135.  Defendants argue that this claim should be dismissed because Mr. Kehl has failed to allege a "'conspiracy' above the speculative level."  ECF No. 18 at 19.

Section 1985(3) "is a 'purely remedial statute, providing a civil cause of action when some otherwise-defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy.'"  *Lake v. Arnold*, 112 F.3d 682, 688 n.10 (3d Cir. 1997) (quoting *Great Am. Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 376 (1979)).  To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy;  (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws;  (3) an act in furtherance of the conspiracy;  and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Id.* at 685.  A plaintiff cannot establish a conspiracy by relying on "broad or conclusory

---

[15] In Count VII, Mr. Kehl also alleges that Allegheny County violated federal regulations by failing to maintain the internal controls required by recipients of federal grants. ECF No. 1 ¶¶ 92–93 (citing 2 C.F.R. § 200.303).  The remedies for non-compliance with the regulations cited by Mr. Kehl are only available to the applicable "[f]ederal agency or pass-through entity" responsible for administering the federal grant in question. *See* 2 C.F.R. § 200.339. Accordingly, dismissal with prejudice is also warranted to the extent Mr. Kehl attempts to state a claim for violations of those regulations.

allegations." *Robinson v. Sobina*, No. 09-247, 2011 WL 6056894, at *8 (W.D. Pa. Dec. 6, 2011) (Bissoon, J.) (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)).  Rather, "there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity" to deprive the plaintiff of their rights. *Id.* at *9.  "[S]ubjective suspicions and unsupported speculation" will not do.  *Id.*

Here, Mr. Kehl alleges that Defendants "create[ed], form[ed], enact[ed], and implement[ed]" the County's COVID-19 vaccine policy "intentionally to deprive, substantive and procedural due process, in addition to violating, clearly establish [sic] law and denial of religious liberties." ECF No. 1 ¶ 132.  According to Mr. Kehl, "[t]here were coordinated efforts and team meetings in addition to emails to department heads of COUNTY in which human resources and multiple actors engaged in this unlawful behavior." *Id.* ¶ 133.  These are the sort of speculative and conclusory allegations that are insufficient to establish a conspiracy at the pleading stage.  *See Robinson*, 2011 WL 6056894, at *8–9; *D.R. by L.R.*, 972 F.2d at 1376–77.  While Mr. Kehl alleges that there were some meetings and emails in which "multiple actors" engaged in "unlawful behavior," he does not describe when these communications occurred and which, if any, of the Defendants were involved.  Nor does Mr. Kehl describe the content of these communications sufficiently such that they establish there was a meeting of the minds to deprive him or anyone else of their rights or privileges.  Absent such allegations, Mr. Kehl fails to establish that the Defendants conspired against him.

Accordingly, Count XII of the Complaint will be dismissed.  However, the Court will grant Mr. Kehl leave to amend with respect to Count XII.

**D.      The Court Will Defer Ruling on Mr. Kehl's State Law Claims**

Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over state law claims that are "so related to claims in the action" over which the court has original jurisdiction.  The court may decline to exercise supplemental jurisdiction in several circumstances set forth in § 1367(c), including where "the district court has dismissed all claims over which it has original jurisdiction."  *Id.*  The justification for exercising supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants;  if these are not present a federal court should hesitate to exercise jurisdiction over state claims."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Court has original jurisdiction over Mr. Kehl's claims in Counts II, III, IV, V, VI, VII, X, and XII because those claims raise a federal question.  *See* 28 U.S.C. § 1331.  As detailed more fully above, the Court will dismiss Counts VI, VII, and X with prejudice, and dismiss the remaining federal claims without prejudice and with leave to amend.  Accordingly, the Court will defer a decision on whether to exercise supplemental jurisdiction over Mr. Kehl's state law claims[16] until it becomes clear whether there will be a viable federal claim remaining in this case. If the Court ultimately dismisses all federal claims against the Defendants with prejudice, it will have dismissed all claims over which it has original jurisdiction and declining to exercise supplemental jurisdiction over Mr. Kehl's state law claims would be supported by considerations of judicial economy, convenience, and fairness.

---

[16] Mr. Kehl's claims in Counts I, VIII, IX, and XI arise under state law.  ECF No. 1.  Additionally, Mr. Kehl appears to assert state law claims for violation of the Pennsylvania Constitution in Counts II, III, VI, and VII alongside the federal claims that he asserts in those Counts.  *See id.* ¶¶ 50, 58, 87, 90.

**IV.    Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss will be **GRANTED IN PART** such that Counts II, III, IV, V, VI, VII, X, and XI will be dismissed.  Dismissal will be **WITH PREJUDICE** with respect to Mr. Kehl's Ninth Amendment claim in Count VI, FDCA claim in Count VII, and substantive due process claim in Count X.  Dismissal will be **WITHOUT PREJUDICE** and with leave to amend with respect to Mr. Kehl's Free Exercise claims in Counts II and III, Equal Protection claims in Counts IV and V, procedural due process claim in Count X, and civil rights conspiracy claim under § 1985(3) in Count XII.  Otherwise, Defendants' Motion to Dismiss will be **DENIED WITHOUT PREJUDICE** because the Court will defer ruling on Mr. Kehl's state law claims[17] pending a determination on whether to exercise supplemental jurisdiction over such claims.

DATED this 19th day of December, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

cc (via US mail):

---

[17] *See* note 16, *supra*.

Mathew Kehl
*Pro se*
124 Teal Dr.
McKees Rocks, PA 15136