IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATHEW KEHL,

          Plaintiff,

    v.

ALLEGHENY COUNTY, RICH
FITZGERALD, LAURA ZASPEL, NICOLE
NAGEL, DEBRA BOGEN,

          Defendants.

2:24-CV-00060-CCW

## OPINION

Before the Court is Defendants' Motion to Dismiss *pro se* Plaintiff Mathew Kehl's Amended Complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. ECF No. 31. For the reasons set forth below, the Court will **GRANT** the Motion.

## I. Factual Background

This case arises from Defendant Allegheny County's decision to terminate Mr. Kehl's employment after he refused to comply with its COVID-19 vaccine mandate. ECF No. 28. The Court previously dismissed some of the claims asserted in Mr. Kehl's original complaint with prejudice, and some without prejudice and with leave to amend. *See* ECF Nos. 22, 23. Mr. Kehl timely filed an Amended Complaint re-asserting the claims for which the Court granted leave to amend. ECF No. 28. The Amended Complaint names as Defendants Allegheny County (the "County"), as well as four current or former County employees: County Executive Rich Fitzgerald, Human Resources Director Laura Zaspel, Employee Relations Manager Nicole Nagel, and Health Director Debra Bogen (collectively "Individual Defendants"). *Id.* ¶¶ 18–21.

The allegations in Mr. Kehl's Amended Complaint largely track those contained in his original complaint. The relevant factual allegations in the Amended Complaint, taken as true, are as follows.

Mr. Kehl served as an employee of Allegheny County for almost sixteen years.[1] ECF No. 28 ¶ 24; Amended Complaint Ex. 5, ECF No. 28-5. On September 29, 2021, Allegheny County enacted a COVID-19 vaccine mandate, which required all executive branch employees to either show proof of vaccination or an accommodation by December 1, 2021 or be subject to termination. Amended Complaint Ex. 1, ECF No. 28-1. The vaccine mandate was "created and implemented" by Defendants Fitzgerald and Bogen. ECF No. 28 ¶ 52. The mandate was enacted to "promote the health and safety of the county workforce, and to ensure the continued protection of the public with whom the workforce interacts." Amended Complaint Ex. 1, ECF No. 28-1. The County believed that the mandate would achieve these goals because, based on information from the Centers for Disease Control and Prevention and other agencies, the COVID-19 vaccine was the best way to slow the spread of the virus and prevent infection by variants. *Id.* The County's vaccine mandate allowed for "exceptions as required by law." *Id.*

Mr. Kehl refused to receive the vaccine. *See* ECF No. 28 ¶¶ 28–37. As a result, he was required to wear a face covering, undergo periodic mandatory COVID-19 testing, and respond to questioning regarding his "religious beliefs and health convictions." *Id.* ¶¶ 77, 79, 89. As an unvaccinated employee, Mr. Kehl was also ineligible for benefits like additional paid sick leave that vaccinated employees received. *Id.* ¶ 81. Mr. Kehl alleges that this treatment "divided and isolated [him] into a subclass of people," *id.* ¶ 124, and infringed on his right to privacy, *id.* ¶ 77.

---

[1] While Exhibit 4 to Mr. Kehl's Amended Complaint indicates that he was a truck driver for the County, it is unclear whether he served in that capacity during his entire sixteen-year tenure. *See* Amended Complaint Ex. 4 at 3–4, ECF No. 28-4.

On September 29, 2021, Mr. Kehl received a letter from the County, signed by Defendant Zaspel, stating that if he did not comply with the vaccine mandate by December 1, 2021, his employment with the County would be subject to termination. *Id.* ¶ 30; Amended Complaint Ex. 3, ECF No. 28-3. To avoid termination, Mr. Kehl submitted exemption requests to the County in an attempt to opt-out of the vaccine mandate on religious and medical grounds. ECF No. 28 ¶ 28; Amended Complaint Ex. 4, ECF No. 28-4. Mr. Kehl's request for a medical exemption appears to have been based on his belief that he did not present a danger to his coworkers or the public because he had already contracted COVID-19 and therefore had natural immunity. *See* Amended Complaint Ex. 4, ECF No. 28-4 at 1–5. Mr. Kehl's religious exemption request was based on his view that that submitting to vaccination would violate his "religious and faithful beliefs" because the "injections were researched and manufactured using baby parts." *Id.* at 9. Mr. Kehl's exemption requests were denied by the County in letters dated December 6, 2021, and December 20, 2021. Amended Complaint Ex. 5, ECF No. 28-5.

On January 10, 2022, Mr. Kehl attended a pre-disciplinary hearing with County officials[2] to discuss his noncompliance with the County's vaccine mandate. *Id.* At the hearing, Mr. Kehl again asserted a request for an exemption from the vaccine mandate on religious and medical grounds. *Id.* The County denied his renewed request by letter dated January 14, 2022. *Id.* On January 26, 2022, the County terminated Mr. Kehl's employment due to his failure to comply with the vaccine mandate. *Id.*

---

[2] Mr. Kehl's termination letter does not specify who was at this hearing, nor does Mr. Kehl identify the participants in his Amended Complaint. *See generally* ECF No. 28; Amended Complaint Ex. 5, ECF No. 28-5.

The Defendants have moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 31, 32. Mr. Kehl has opposed the Motion. ECF No. 34. The Motion is therefore ripe for resolution.

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"). And when resolving a *pro se* plaintiff's motion, courts "liberally construe *pro se* filings with an eye toward their substance rather than their form." *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

## III.    Legal Analysis

Mr. Kehl's Amended Complaint asserts eight claims against various Defendants.[3] His federal claims include constitutional claims under 42 U.S.C. § 1983 for violations of the Free Exercise Clause of the First Amendment (Counts II and III), the Equal Protection Clause of the Fourteenth Amendment (Counts IV and V), and his right to procedural due process under the Fourteenth Amendment (Count X), as well as a civil rights conspiracy claim under 42 U.S.C. § 1985(3) (Count XII).[4] ECF No. 28 ¶¶ 94–181. Mr. Kehl also appears to assert claims for violation of the Pennsylvania Constitution in Counts II and III alongside the federal claims that he asserts in those Counts. *See id.* ¶¶ 94, 110. The Court will address each claim in turn below.

---

[3] In his Amended Complaint, Mr. Kehl has removed certain claims alleged in his original complaint but kept the original numbering of the claims that he re-asserts. For example, the Amended Complaint does not contain a "Count I," which was a state law claim asserted in the original complaint that the Court deferred consideration of. *See* ECF Nos. 22, 28. Rather, the first claim that appears in the Amended Complaint is Count II, which the Court dismissed from the original complaint with leave to amend. *See* ECF Nos. 22; 28 at 94–109.

[4] The Court has jurisdiction over Mr. Kehl's federal claims pursuant to 28 U.S.C. § 1331.

A.    **Mr. Kehl has Failed to State a Claim under § 1983**

Mr. Kehl advances several different constitutional claims pursuant to 42 U.S.C. § 1983 based on Defendants' implementation and enforcement of Allegheny County's COVID-19 vaccine mandate.  ECF No. 28 ¶¶ 94–174.

1.    **Legal Framework**

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983.  To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor."  *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983).  Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

While "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), it "can be held liable [for constitutional violations] when the 'execution of a government's policy or custom . . . inflicts the injury.'"  *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell*, 436 U.S. at 694).  To state a *Monell* claim, a plaintiff must allege that his "harm was caused by a constitutional violation" and that "the municipality is responsible for that

violation." *Bhatnagar*, 2023 WL 5378834, at *3.  Where there is no underlying constitutional violation, a *Monell* claim will not lie. *Id.* (affirming dismissal of a *Monell* claim after determining that the plaintiff "had no remaining cognizable constitutional claim").  Section 1983 claims brought against individual defendants acting in their official governmental capacities "are subject to the same *Monell* standard for institutional liability" because such claims "essentially are claims against the [government] itself." *Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *3 n.4 (3d Cir. June 7, 2024) (citing *Monell*, 436 U.S. at 690 n.55).

## 2.    Mr. Kehl has Failed to State a Free Exercise Claim

In Count II of the Amended Complaint Mr. Kehl asserts a violation of the First Amendment's Free Exercise Clause against the Individual Defendants, and in Count III he asserts a *Monell* claim against Allegheny County for the same violation.[5]  ECF No. 28 ¶¶ 94–122.  The crux of Mr. Kehl's Free Exercise claims is that Allegheny County's COVID-19 vaccine mandate deprived him of his religious freedom by presenting him with an untenable choice:  accept a COVID-19 vaccination—which Mr. Kehl states would violate his religious freedom because the vaccine allegedly contained aborted fetal cells—or face termination. *Id.*  Mr. Kehl's original complaint asserted Free Exercise claims against the Defendants based on the same allegations. *See* ECF No. 1 ¶¶ 50–65.  The Court dismissed the Free Exercise claims in the original complaint after concluding that the County's vaccine mandate was a neutral policy of general applicability, and that the policy was rationally related to the legitimate state interest in promoting the health and safety of the County workforce.  ECF No. 22 at 10–12.  Defendants argue that the Court should

---

[5] Because Mr. Kehl asserts § 1983 claims against the County and against the Individual Defendants in both their individual and official capacities, *see* ECF No. 28 ¶¶ 18–21, the Court will first determine whether Mr. Kehl has plausibly alleged that his First Amendment rights were violated.  This approach is appropriate because regardless of who the Defendant is or in what capacity they are being sued, there can be no § 1983 liability without an underlying constitutional violation. *See Nicini*, 212 F.3d at 806; *Bhatnagar*, 2023 WL 5378834, at *3; *Beers*, 2024 WL 2874283, at *3 n.4.  The Court takes this same approach with respect to all of Mr. Kehl's § 1983 claims and, to the extent it does not find a constitutional violation, ends its analysis there.

reach the same conclusion with respect to the Free Exercise claims in the Amended Complaint. ECF No. 32 at 5–8. The Court agrees with the Defendants and will dismiss Counts II and III.

The "Free Exercise Clause 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'" *Spivack v. City of Phila.*, 109 F.4th 158, 166 (3d Cir. 2024) (quoting *Emp. Div., Dep't of Hum. Res. Of Or. v. Smith*, 494 U.S. 872, 879 (1990)). "Government policies that are both neutral and generally applicable are subject to rational basis review," *i.e.*, they must only be rationally related to a legitimate state interest. *Id.* Conversely, if a law is not neutral or generally applicable it triggers strict scrutiny and must be narrowly tailored to further a compelling state interest. *Id.* "A government policy is neutral if it does not 'restrict[] practices because of their religious nature' or evince 'intoleran[ce] of religious beliefs.'" *Id.* at 167 (quoting *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021)). "And a policy is generally applicable so long as it does not either 'provid[e] a mechanism for individualized exemptions' or 'prohibit[] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Id.* (quoting *Fulton*, 593 U.S. at 533–34).

The Court previously concluded that the facts alleged in the original Complaint established that the County's vaccine policy was neutral. ECF No. 22 at 10. The Court reaches the same conclusion with respect to the Amended Complaint. On its face, the County's vaccine policy applied to all Allegheny County employees under the executive branch equally, regardless of their religious affiliation. *See* Amended Complaint Ex. 1, ECF No. 28-1 ("COVID-19 vaccinations will be required of *all* county employees under the executive branch.") (emphasis added). And as with the original complaint, the Amended Complaint is devoid of any allegations from which the Court can infer that Allegheny County's treatment of Mr. Kehl's religious exemption request or its implementation of the vaccine mandate more generally evinced hostility towards religion. *See*

*generally* ECF No. 28; *see also Chesher v. Allegheny Cnty.*, No. 22-CV-1822, 2024 WL 2248207, at *7–9 (W.D. Pa. May 16, 2024) (Horan, J.) (concluding that the County's vaccine mandate was neutral because it applied to all County employees under the executive branch and plaintiff alleged no facts "establish[ing] that the mandate was implemented because of his religious beliefs, or because of the religious beliefs of any others"); *Shim v. Allegheny Cnty.*, No. 23-393, 2024 WL 1095811, at *2–3 (W.D. Pa. Mar. 13, 2024) (Bissoon, J.) (making same conclusion on similar reasoning).

The Court also concludes that the facts alleged in the Amended Complaint establish that Allegheny County's vaccine mandate was generally applicable. First, while the Amended Complaint alleges that the County "categorically denied religious exemptions" and that a "system allowing for exemptions while categorically denying religious ones 'fails to be generally applicable,'" ECF No. 28 ¶ 118, Mr. Kehl does not allege any specific facts demonstrating that the County's vaccine mandate "prohibit[ed] religious conduct while permitting secular conduct that undermine[d] the government's asserted interests in a similar way." *Spivack*, 109 F.4th at 174; *see generally* ECF No. 28. Rather, Mr. Kehl alleges that both his medical and religious exemption requests were "summarily dismissed," which is consistent with his allegation that the County "lopsided[ly] deni[ed] . . . exemptions, both medical and religious." ECF No. 28 ¶¶ 33, 35. Moreover, the policy is clear that the only exemptions allowed were those "required by law," ECF No. 28-1, and it does not follow that exemptions "required by law" necessarily included secular exemptions to the exclusion of religious ones absent any allegations to that effect. *Cf. Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999) (finding exemption policy not generally applicable where policy allowed medical exemptions to comply

with the Americans with Disabilities Act, but not religious exemptions to comply with Title VII of the Civil Rights Act of 1964).

Second, Mr. Kehl does not allege that Allegheny County employed a mechanism for discretionary exemptions to be granted by any particular individual.  *See generally* ECF No. 28. Just because a mandate provides for exemption procedures does not mean those procedures are *per se* discretionary such that the mandate cannot be generally applicable.  *See Spivack*, 109 F.4th 172 n.8 (explaining that permitting religious exemptions does not automatically vitiate general applicability so as to trigger strict scrutiny).  Rather, it "is a policy of individualized, discretionary exemptions in which a government official may unilaterally evaluate 'the particular reasons for a person's conduct'" that renders a mandate not generally applicable.  *Id.* (quoting *Fulton*, 593 U.S. 522, 533 (2021)).  While Mr. Kehl alleges the County exercised "unrestricted discretion" in the "implementation and execution of the policy to deny religious objections and exemptions," ECF No. 28 ¶ 99, these are "bare averments" that do not describe how the policy operated and are insufficient to render the policy not generally applicable.  *See Shim*, 2024 WL 1095811, at *3. Furthermore, Mr. Kehl's allegation that the County exercised "unrestricted discretion" is belied by his allegations that the County "lopsided[ly] deni[ed] . . . exemptions, both medical and religious" and that the "denial process . . . [was] scripted and pre-determined."  ECF No. 28 ¶¶ 34–35. Because there are no allegations demonstrating that Allegheny County had a policy of providing individualized discretionary exemptions, the Court concludes that the County's mandate was generally applicable.  *See generally* ECF No. 28;  *see also Chesher*, 2024 WL 2248207, at *8 ("Allegheny County did not create a formal system of discretionary exceptions to be determined by any specific individual.").

In sum, as with the original Complaint, the allegations in the Amended Complaint establish that Allegheny County's COVID-19 vaccine mandate was neutral and generally applicable, and therefore rational basis review applies. "Rational basis review is a very deferential standard." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018). "The general rule is that legislation is presumed to be valid and will be sustained if [it is] rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). As discussed in the Court's previous Opinion, the vaccine mandate in this case easily meets this low threshold. Allegheny County enacted the vaccine mandate to "promote the health and safety of the county workforce, and to ensure the continued protection of the public with whom the workforce interacts" by slowing the spread of COVID-19. Amended Complaint Ex. 1, ECF No. 28-1. This is a legitimate state interest. *See Spivack,* 109 F.4th at 178. The vaccine mandate was rationally related to this interest because, based on information from the Centers for Disease Control and Prevention, among other bodies, the COVID-19 vaccine was the best way to slow the spread of the virus and prevent infection by variants. Amended Complaint Ex. 1, ECF No. 28-1; *see also Shim*, 2024 WL 1095811, at *3 (finding the vaccine mandate rationally related to preventing the spread of COVID-19); *Chesher*, 2024 WL 2248207, at *9 (same).

Because Allegheny County's vaccine mandate survives rational basis review, Mr. Kehl's § 1983 claims in Counts II and III of the Complaint fail for lack of a cognizable constitutional violation. And because the Court previously dismissed Counts II and III of the original Complaint for the same reasons, and Mr. Kehl has been unable to cure the deficiency in his Amended Complaint, the Court finds that further amendment would be futile and will dismiss Counts II and III with prejudice. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (explaining that courts

should permit a curative amendment in the civil rights context unless such an amendment would be inequitable or futile).

### 3.    Mr. Kehl has Failed to State an Equal Protection Claim

In Count IV of the Amended Complaint, Mr. Kehl asserts a claim under the Fourteenth Amendment's Equal Protection Clause against Allegheny County only,[6] and in Count V of the Amended Complaint he asserts a claim against the Individual Defendants for the same violation. ECF No. 28 ¶¶ 110–140.  Mr. Kehl contends that by implementing the COVID-19 vaccine mandate, the Defendants impermissibly "divided and isolated plaintiff into a subclass of people," *id.* ¶¶ 124, 142, and that vaccinated employees received benefits that unvaccinated employees did not, such as additional paid sick leave, *id.* ¶ 130.  The Court dismissed the Equal Protection claims in the original complaint after concluding that Mr. Kehl had failed to allege that he was treated any differently from similarly situated employees, and that even if vaccinated and unvaccinated individuals were similarly situated, the differential treatment of unvaccinated individuals survived rational basis review.  ECF No. 22 at 12–14.  The Court reaches the same conclusion with respect to the Amended Complaint and will dismiss Mr. Kehl's Equal Protection claims.

The Fourteenth Amendment prohibits any State from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "[T]o bring a successful equal protection claim, plaintiffs 'must demonstrate that they received different treatment from that received by other individuals similarly situated.'"  *Child.'s Health Def.*, 93 F.4th at 84 (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176,

---

[6] The Court interprets this as a *Monell* claim, and accordingly will first consider whether there is an underlying constitutional violation.  Because the Court finds no underlying constitutional violation, it need not reach the remaining components of the *Monell* analysis.  *See* note 5, *supra*.

196 (3d Cir. 2009)).  "At the pleading stage, that means plaintiffs must adequately allege that they are alike in all relevant respects."  *Id.* (quotations omitted).

Here, the Amended Complaint suffers from the same deficiency as the original complaint. Specifically, Mr. Kehl has not shown that he was treated any differently from similarly situated (*i.e.*, unvaccinated) employees.  First, as discussed above, the County's vaccine mandate applied equally to all executive branch employees.  *See* Amended Complaint Ex. 1, ECF No. 28-1.  Second, Mr. Kehl's assertion that vaccinated employees were treated more favorably than he was is irrelevant to the Equal Protection analysis because as an unvaccinated employee he was definitionally not "alike in all relevant respects" with vaccinated employees.  *Child.'s Health Def.*, 93 F.4th 66 at 84.  And Mr. Kehl has not alleged facts demonstrating that he was treated any differently than other non-vaccinated employees.  *See generally* ECF No. 28.

Furthermore, as noted in the Court's prior Opinion, even if vaccinated and unvaccinated employees were "similarly situated," Mr. Kehl's Equal Protection claims would fail.  The Third Circuit has found that only classifications involving a protected class are subject to heightened scrutiny—and being unvaccinated "does not confer protected status."  *See Child.'s Health Def.*, 93 F.4th at 84 n.38.  Thus, Defendants' vaccine mandate and differential treatment of unvaccinated employees would only need to survive rational basis review.  *See id.* at 84.  As discussed above in Part III.A.2, the Court concludes that the vaccine mandate meets this low threshold.  Accordingly, Mr. Kehl's Equal Protection claims in Counts IV and V of the Complaint fail and will be dismissed. Because Mr. Kehl has been unable to cure the deficiency that prompted the dismissal of these Counts in the original complaint, the Court finds that further amendment would be futile, and the dismissal will be with prejudice.  *See Balicki*, 875 F.3d at 151.

### 4.    Mr. Kehl has Failed to State a Procedural Due Process Claim

In Count X of the Amended Complaint, Mr. Kehl alleges that the Defendants violated his right to procedural due process under the Fourteenth Amendment.  ECF No. 28 ¶¶ 153–174.  Specifically, he alleges that he was deprived of his "constitutionally protected rights to due process, including the right to a meaningful hearing before adverse employment consequences" because the pre-termination *Loudermill* hearing which he was afforded was conducted in a manner "bereft of fairness."  *Id.* ¶ 168.  The Court previously dismissed the procedural due process claim in the original complaint because Mr. Kehl admitted he was afforded an opportunity to be heard at a *Loudermill* hearing, and he did not explain how that hearing was insufficient to provide him due process.  ECF No. 22 at 15–16.  Defendants argue that the Amended Complaint suffers from the same deficiency.  ECF No. 32 at 10–12.  The Court agrees, and will dismiss Count X.

To make out a procedural due process claim, a plaintiff must establish that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (internal quotation marks omitted).  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Id.* at 220 (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)).  A pre-termination hearing "need not be elaborate and serves only as an 'initial check against mistaken decisions.'"  *Thomas v. Del. State Univ.*, 626 F. App'x 384, 387 (3d Cir. 2015) (quoting *Loudermill*, 470 U.S. at 545).  Thus, a "tenured public employee is [only] entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Loudermill*, 470 U.S. at 546.

Here, Mr. Kehl's Amended Complaint does not allege new facts sufficient to state a plausible procedural due process claim. Mr. Kehl received written notice on September 29, 2021, that he would be required to receive a COVID-19 vaccination or be subject to termination. Amended Complaint Exs. 1 and 3, ECF Nos. 28-1, 28-3. Mr. Kehl admits that he was afforded a *Loudermill* hearing prior to his termination to discuss his noncompliance with the County's COVID-19 vaccine mandate. *See, e.g.*, ECF No. 28 ¶¶ 36, 168. Indeed, Mr. Kehl's termination letter notes that at this hearing Mr. Kehl was able to assert his position that he should be exempt from the vaccine mandate on religious and medical grounds. *See* Amended Complaint Ex. 5, ECF No. 28-5. While the County denied Mr. Kehl's request for an exemption, *id.*, the allegations in the Amended Complaint demonstrate that Mr. Kehl was afforded an opportunity to be heard prior to his termination. Accordingly, Mr. Kehl's procedural due process claim in Count X of the Complaint fails and will be dismissed. Because Mr. Kehl was given an opportunity to cure the deficiencies in his original complaint and has not done so, the Court finds that further amendment would be futile and the dismissal will be with prejudice. *See Balicki*, 875 F.3d at 151.

### B. Mr. Kehl has Failed to State a Claim under § 1985(3)

In Count XII of the Amended Complaint, Mr. Kehl alleges that Defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(3). ECF No. 28 ¶¶ 175–81. The Court previously dismissed the same claim as asserted in the original complaint because Mr. Kehl failed to plausibly allege that the Defendants engaged in a conspiracy. ECF No. 22 at 20–21. Defendants argue that the Amended Complaint similarly "does not plead any 'conspiracy' above the speculative level." ECF No. 32 at 12. The Court agrees with the Defendants.

Section 1985(3) "is a 'purely remedial statute, providing a civil cause of action when some otherwise-defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy.'" *Lake v. Arnold*, 112 F.3d 682, 688 n.10 (3d Cir.

1997) (quoting *Great Am. Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 376 (1979)).  To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy;  (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws;  (3) an act in furtherance of the conspiracy;  and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Id.* at 685.  A plaintiff cannot establish a conspiracy by relying on "broad or conclusory allegations."  *Robinson v. Sobina*, No. 09-247, 2011 WL 6056894, at *8 (W.D. Pa. Dec. 6, 2011) (Bissoon, J.) (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)).  Rather, "there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity" to deprive the plaintiff of their rights. *Id.* at *9.  "[S]ubjective suspicions and unsupported speculation" will not do.  *Id.*

The allegations in the Amended Complaint as to Mr. Kehl's civil rights conspiracy claim are substantially identical to those in the original complaint.  Specifically, Mr. Kehl alleges that Defendants "create[ed], form[ed], and implement[ed]" the County's COVID-19 vaccine policy "intentionally to deprive, religious rights, equal protections under the law and procedural due process, in addition to violating clearly establish [sic] law."  ECF No. 28 ¶ 179(A).  According to Mr. Kehl, "[t]here were coordinated efforts and team meetings in addition to emails to department heads of COUNTY in which human resources and multiple actors engaged in this unlawful behavior."  *Id.* ¶ 179(B).  As noted in the Court's Opinion dismissing the original complaint, these are the sort of speculative and conclusory allegations that are insufficient to establish a conspiracy at the pleading stage.  *See Robinson*, 2011 WL 6056894, at *8–9;  *D.R. by L.R.*, 972 F.2d at 1376–77.  While Mr. Kehl alleges that there were some meetings and emails in which "multiple actors" engaged in "unlawful behavior," he does not describe when these communications occurred and

which, if any, of the Defendants were involved.  Nor does Mr. Kehl describe the content of these communications sufficiently such that they establish there was a meeting of the minds to deprive him or anyone else of their rights or privileges.  Absent such allegations, Mr. Kehl fails to establish that the Defendants conspired against him.

Accordingly, Count XII of the Amended Complaint will be dismissed.  Because Mr. Kehl has not cured the deficiencies identified in the Court's prior Opinion despite being afforded an opportunity to do so, dismissal will be with prejudice as further amendment would be futile.  *See Balicki*, 875 F.3d at 151.

### C. The Court Declines to Exercise Supplemental Jurisdiction Over Mr. Kehl's State Law Claims

Because the Court will dismiss all of Mr. Kehl's federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims for violation of the Pennsylvania Constitution asserted in Counts II and III and will dismiss those claims without prejudice.[7]  *See* 28 U.S.C. § 1367(c).

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss will be **GRANTED.**  An appropriate Order will follow.

---

[7] In his original complaint, Mr. Kehl asserted a number of state law claims.  *See* ECF No. 1.  In granting the Defendants' first motion to dismiss, the Court deferred deciding whether to exercise supplemental jurisdiction over Mr. Kehl's state law claims pending a determination of whether there would be any viable federal claims remaining in this case.  ECF Nos. 22, 23.  In his Amended Complaint, Mr. Kehl did not include many of the state law claims asserted in his original complaint.  *Compare*, ECF No. 2 (asserting state law claims for intentional misrepresentation (Count I), breach of contract (Count VIII), tortious interference with contract (Count IX), and negligent infliction of emotional distress (Count XI)), *with*, ECF No. 28 (asserting no such claims).  However, even if Mr. Kehl had re-asserted those claims, the Court would decline to exercise supplemental jurisdiction over them given that the Court will dismiss all of Mr. Kehl's federal claims.

DATED this 22nd day of August, 2025.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record

cc (via US mail):

Mathew Kehl
*Pro se*
124 Teal Dr.
McKees Rocks, PA 15136